# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948

---

| | |
|---|---|
| Appellate Court Caption | NIKOLAS BEZANIS, Plaintiff-Appellant, v. FOX WATERWAY AGENCY and THE SHERIFF OF LAKE COUNTY, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-0948 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | September 27, 2011<br><br>March 15, 2012<br>March 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the injuries plaintiff suffered when he dove headfirst into the shallow area of a lake 400 feet from the shore and struck the bottom, the trial court's dismissal of his complaint with prejudice was affirmed, since defendants, the waterway agency and the county sheriff, had no duty to warn plaintiff of the danger of such conduct. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-L-773; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel F. Konicek, James P. Lynch, and Karli L. Moore, all of Konicek & Dillon, P.C., of Geneva, for appellant.

Patrick J. Ruberry, of Litchfield Cavo, LLP, of Chicago, for appellee Fox Waterway Agency.

Michael J. Waller, State's Attorney, of Waukegan (Carla N. Wyckoff, Assistant State's Attorney, of counsel), for appellee Sheriff of Lake County.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.

Presiding Justice Jorgensen and Justice Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff, Nikolas Bezanis, dived headfirst from a boat into a shallow area of a lake, about 400 feet from shore, and he was severely injured when his head struck the lake bottom. Plaintiff filed a three-count second amended complaint, alleging that defendants, Fox Waterway Agency (FWA) and the Lake County sheriff (Sheriff), owed and breached a duty to warn boaters and swimmers of the risk of diving into shallow water far from shore. The trial court dismissed with prejudice the second amended complaint, and plaintiff appeals. The facts of this case are tragic, but the well-settled authority involving the open and obvious risks associated with bodies of water compels us to conclude that defendants owed plaintiff no duty to warn of the risk of diving far from shore. We affirm the dismissal with prejudice of plaintiff's second amended complaint.

¶ 2                    I. FACTS

¶ 3      The injury occurred at 5:45 p.m. on August 21, 2008, on Petite Lake, which is one of 15 lakes that comprise the Illinois Fox River's Chain O' Lakes system. The complaint alleges that plaintiff, a teenager, dived headfirst off an anchored boat in the middle of the lake, about 400 feet from shore. As the water was only three feet deep in that area, plaintiff struck his head on the bottom of the lake and he is now quadriplegic. Plaintiff alleges that defendants were responsible for the safety of people on the lake and breached their duty of care by failing to place buoys, markers, or other flotation devices on the water to warn against diving into the shallow parts of the lake, including into those areas far from shore. Count I alleges that FWA was negligent, and counts II and III allege willful and wanton conduct by FWA and the Sheriff, respectively.

¶ 4    FWA and the Sheriff each filed a motion to dismiss under sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code). See 735 ILCS 5/2-615, 2-619(a)(9), 2-619.1 (West 2010) (section 2-619.1 providing for combined motions seeking relief under sections 2-615 and 2-619). FWA argued that counts I and II failed to state claims of negligence and willful and wanton conduct because plaintiff had failed to allege facts to establish that FWA owed plaintiff a duty to warn (see 735 ILCS 5/2-615 (West 2010)). In particular, FWA argued that plaintiff should have known that diving into water of unknown depth presents an open and obvious risk of injury. FWA also argued that sections 2-201 and 3-108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201, 3-108(a) (West 2010)) conferred tort immunity that was affirmative matter barring the claims (see 735 ILCS 5/2-619(a)(9) (West 2010)).

¶ 5    The Sheriff argued that count III failed to state a claim of willful and wanton conduct (see 735 ILCS 5/2-615 (West 2010)) and that certain sections of FWA's code of rules and regulations were affirmative matter defeating the claim (see 735 ILCS 5/2-619(a)(9) (West 2010)). Specifically, the Sheriff argued that (1) the risk of injury from diving was open and obvious, and therefore plaintiff had failed to allege sufficient facts to establish a duty to warn; (2) plaintiff had failed to allege sufficient facts that, under section 1-210 of the Tort Immunity Act (745 ILCS 10/1-210 (West 2010)), the Sheriff had engaged in a course of action that showed an actual or deliberate intention to cause harm or an utter indifference to or conscious disregard for the safety of others; and (3) plaintiff had failed to allege sufficient facts to show that the Sheriff owed plaintiff a special duty so as to overcome the immunity conferred by section 2-103 of the Tort Immunity Act (745 ILCS 10/2-103 (West 2010)). The Sheriff also argued that several statutes and rules specifically assigned responsibility for the Chain O' Lakes to other entities, including the Illinois Department of Natural Resources (DNR) and FWA, and thus were affirmative matter defeating the claim against the Sheriff.

¶ 6    On May 12, 2010, the trial court dismissed the complaint with prejudice, and the court denied plaintiff's motion to reconsider on August 31, 2010. In a one-page handwritten order, the court stated that defendants did not owe plaintiff a duty to warn and that defendants were immune from plaintiff's claims. Plaintiff timely appeals.

¶ 7                                              II. ANALYSIS

¶ 8    Defendants' motions to dismiss were based on sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2010)). A dismissal under section 2-615 admits all well-pleaded facts and attacks the legal sufficiency of the complaint and presents the question of whether the complaint states a cause of action upon which relief could be granted. 735 ILCS 5/2-615 (West 2010); *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 790 (2001). A motion to dismiss under section 2-619, on the other hand, admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002); see 735 ILCS 5/2-619(a)(9) (West 2010) (permitting involuntary dismissal where the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the

claim"). A motion to dismiss under either section 2-615 or section 2-619 admits all well-pled allegations in the complaint and reasonable inferences to be drawn from the facts. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997). A reviewing court must interpret all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368-69 (2003). Our review of a dismissal under either section is *de novo*. *Van Meter*, 207 Ill. 2d at 368.

¶ 9                                    A. Completeness of the Record

¶ 10    FWA contends that the dismissal must be affirmed on the ground that plaintiff has failed to supply this court with reports of proceedings from the hearings on defendants' motions to dismiss and plaintiff's motion to reconsider the dismissal. Under *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error; and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court conformed with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92.

¶ 11    Plaintiff responds that reports of proceedings are not available, because there was no court reporter at either hearing, but plaintiff could have remedied that circumstance easily. In this court, plaintiff could have filed a bystander's report under Illinois Supreme Court Rule 323(c) (Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005)) or an agreed statement of facts under Rule 323(d) (Ill. S. Ct. R. 323(d) (eff. Dec. 13, 2005)). Either could have provided the reasons for the trial court's ruling. Doubts that arise from the incompleteness of the record will be resolved against the appellant (*Foutch*, 99 Ill. 2d at 392), but in this case, our review is limited to the pleadings, motions, and supporting documents, which are part of the record. Whether the complaint states a claim and whether there is affirmative matter defeating a claim are questions of law that we review *de novo*, without showing deference to the trial court's reasoning. Thus, the incompleteness of the record does not hinder our review, and we reject FWA's assertion that we must affirm the dismissal on that basis.

¶ 12                        B. Negligence and Open and Obvious Conditions

¶ 13    Plaintiff contends that count I states a claim of common-law negligence against FWA. To prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, that the defendant breached that duty, and that the defendant's breach was the proximate cause of injury to the plaintiff. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). Unless a duty is owed, there can be no recovery in tort for negligence. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992).

¶ 14    The existence of a duty is a question of law that is shaped by public policy considerations. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388 (1998). Whether the law will impose an obligation of reasonable conduct upon a defendant for the benefit of a plaintiff depends on the nature of their relationship. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 441 (2006); *LaFever*, 185 Ill. 2d at 388-89. The four factors relevant to whether a duty exists are (1) the reasonable foreseeability of the plaintiff's injury, (2) the reasonable likelihood of

the injury, (3) the magnitude of the defendant's burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *LaFever*, 185 Ill. 2d at 389.

¶ 15 Defendants contend that diving into water of unknown depth, including into the middle of Petite Lake, presented an "open and obvious" condition, negating any alleged duty to warn plaintiff of the danger of diving into shallow water. The open-and-obvious doctrine is an exception to the general duty of care owed by a landowner and in Illinois is based on the Second Restatement of Torts:

"'A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 17 (2010) (quoting Restatement (Second) of Torts § 343A(1) (1965)).

¶ 16 A condition is open and obvious where a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved. *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435 (1990); see also *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1028 (2005) (whether a condition is open and obvious "depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition"). Normally, where there is no dispute about the physical nature of the condition, the question of whether a condition is open and obvious is a legal one for the court. *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1053 (2010).

¶ 17 In cases involving common open and obvious conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such conditions. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448 (1996). In *Bucheleres*, our supreme court discussed three prior opinions that had considered whether a landowner owes a duty to persons who are injured while diving into natural bodies of water. *Bucheleres*, 171 Ill. 2d at 453-54. First, in *Dowen v. Hall*, 191 Ill. App. 3d 903, 907 (1989), the defendant's guest dived off a pier into a lake in the dark and injured himself when he struck the bottom. In holding that the defendant owed no duty to warn of danger or to prevent the plaintiff from diving, the court held, "a reasonable adult in plaintiff's position would recognize that an attempt to execute a head-first flat dive into the lake, without prior awareness of the depth of the waters, might result in severe injury from hitting one's head on the lake bottom." *Dowen*, 191 Ill. App. 3d at 907. The court ruled that the danger involved in "a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult." *Dowen*, 191 Ill. App. 3d at 907.

¶ 18 Second, in *Hagy v. McHenry County Conservation District*, 190 Ill. App. 3d 833 (1989), the court held that the defendant owed no duty to protect a 15-year-old from the obvious risks associated with diving into a swimming hole without checking for changes in the depth of the creek from preceding years. Third, in *Sumner v. Hebenstreit*, 167 Ill. App. 3d 881 (1988), the court held that the defendant was not liable for the injuries incurred when the plaintiff dived into a water-filled sand pit he had dived into many times before. The *Sumner* court observed that the soft sandy bottom of a body of water "shifts with currents and

disturbances" and that there was nothing unusual or deceptive about the bottom of a sand pit that would present a special or indiscernible danger. *Sumner*, 167 Ill. App. 3d at 886.

¶ 19    Consistent with these decisions, the *Bucheleres* court concluded that the open-and-obvious doctrine applied to the plaintiffs who, in separate incidents, dived headfirst off concrete seawalls into shallow parts of Lake Michigan and were injured when their heads struck the bottom. On the threshold issue of whether the lake around the seawalls adjacent to the beaches was an open and obvious condition of potential hazard, the *Bucheleres* court noted that it was undisputed that the water levels of Lake Michigan fluctuate and that storms and strong currents change conditions on the bottom of the lake and the surrounding shores. The plaintiffs did not argue that the seawalls were designed for diving; and it was not disputed that the intended purpose of seawalls is to hold back the lake waters as part of the effort to prevent further erosion of the shoreline. Thus, the court held that "Lake Michigan, as a large body of water with uncertain or fluctuating water levels and bottom composition, presents open and obvious risks to lakefront patrons who dive from concrete seawalls into the lake." *Bucheleres*, 171 Ill. 2d at 455-56.

¶20    *Bucheleres*, *Dowen*, *Hagy*, and *Sumner* support our conclusion that the open-and-obvious doctrine applies to this case. Plaintiff alleges that he was injured when he dived headfirst from a boat into Petite Lake without checking the depth. Plaintiff's explanation for failing to do so is that he expected the water to be of a safe diving depth 400 feet from shore. On that basis, plaintiff argues that this case is distinguishable from the other cases, where the defendants owed no duty to warn because the divers entered the water closer to shore.

¶ 21    While one might reasonably expect–as a general proposition–that the depth of a natural body of water will increase as one travels farther from shore, that expectation does not create a reasonable inference that an area far from shore is safe for diving headfirst. As plaintiff should have been aware, natural lakes are of an uneven depth and can have fluctuating water levels at various points. See, *e.g.*, *Dowen*, 191 Ill. App. 3d at 907. A reasonable person in plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved in attempting to execute a headfirst dive into Petite Lake without prior awareness of the depth of the waters. Plaintiff should have recognized that a headfirst dive into unplumbed depths might result in severe injury from hitting one's head on the lake bottom, regardless of how far he was from shore. See *Dowen*, 191 Ill. App. 3d at 907. Moreover, plaintiff has not alleged that there was anything unusual or deceptive about the water's appearance that would present a special or indiscernible danger. See *Sumner*, 167 Ill. App. 3d at 886. Besides his distance from shore, plaintiff does not allege that his observation of the water in the area gave the false impression that it was deep enough to dive safely.

¶ 22    In his reply brief, plaintiff claims that the shallow water 400 feet from the shore of Petite Lake is analogous to the danger created by a submerged pipe in *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418 (1998). We disagree. In *Jackson*, the plaintiff alleged that her 19-year-old son died after diving headfirst into the deep end of a man-made swimming area and hitting his head on a submerged pipe. *Jackson*, 185 Ill. 2d at 422. The lake bottom was composed of silt, giving the water a murky appearance so that one could not see beneath the surface to gauge the water's depth or detect any submerged obstructions. *Jackson*, 185 Ill.

2d at 421. The plaintiff's theory of the case was that her son's head struck a black plastic pipe that the defendant had used to adjust the water level. The pipe was two inches in diameter, it was not anchored, and sometimes the defendant removed it from the water and placed it on the shore. On the day of the incident, the pipe extended horizontally into the deep end of the lake, near where the decedent dived. *Jackson*, 185 Ill. 2d at 422. Our supreme court held that, although it was undisputed that the decedent hit his head on something when he dived into the lake, summary judgment was precluded by a genuine issue of fact as to how the decedent sustained his injuries: his head could have struck the pipe or the bottom of the lake. *Jackson*, 185 Ill. 2d at 424. The supreme court further held that the appellate court had incorrectly concluded as a matter of law that the defendant owed no duty to the decedent simply because bodies of water present an open and obvious danger. The court observed:

> "Although a body of water was involved in this case, we do not believe that the open and obvious doctrine is dispositive of [the plaintiff's] claims. Cases addressing the open and obvious danger of water are premised on the notion that bodies of water pose two particular types of risk: the risk of drowning and the risk of injury from diving into water that is too shallow. Neither of those risks is at issue here. The danger in this case, according to [the plaintiff], stemmed from the presence of the submerged pipe, whose location was variable and could not be detected by swimmers. The existence of that hazard had nothing to do with the inherent characteristics of bodies of water; it stemmed solely from [the defendant's] conduct." *Jackson*, 185 Ill. 2d at 426.

¶ 23 Considering that (1) the lake was designed, intended, and used solely for recreational swimming and (2) the defendant's personnel periodically moved the submerged pipe, which made it impossible for patrons to assess how the risk of diving might change, the court determined that the likelihood of injury was great and that the risk of injury was reasonably foreseeable. *Jackson*, 185 Ill. 2d at 426-27. The court further stated that the defendant had no justification for imposing such a risk on its patrons, because the pipe had been rendered unnecessary by a new plumbing system and the pipe could have been removed simply and inexpensively. *Jackson*, 185 Ill. 2d at 427.

¶ 24 This case is easily distinguished from *Jackson*, where the defendant owed a duty to remove the submerged pipe. As alleged by the plaintiff, the danger in *Jackson* stemmed only from the defendant's conduct, while this case involves the risk of diving into shallow water, which is an inherent characteristic of bodies of water and a danger that defendants did not create. Plaintiff does not allege that defendants introduced a submerged foreign object that caused the injury or that defendants had anything to do with the placement of the boat before he dived. We conclude that the open-and-obvious doctrine applies to this case.

¶ 25 C. Duty to Warn Against Diving

¶ 26 While a body of water, whether it is natural or artificial, generally is deemed to present an open and obvious danger that is considered to be apparent not only to experienced swimmers, but even to very young children, the existence of an open and obvious danger is not a *per se* bar to finding that a landowner has a duty to exercise reasonable care. *Jackson*, 185 Ill. 2d at 425-26; *Bucheleres*, 171 Ill. 2d at 449. In determining whether such a duty is

owed, a court still must apply the traditional duty analysis, including consideration of the likelihood of injury; the reasonable foreseeability of such injury; the magnitude of the burden of guarding against the injury; and the consequences of placing that burden on the defendant. *Jackson*, 185 Ill. 2d at 425.

¶ 27    Our supreme court has held that the open-and-obvious doctrine implicates the first two factors of the traditional duty analysis: likelihood and foreseeability of injury. *Sollami v. Eaton*, 201 Ill. 2d 1, 15, 17 (2002) (citing *Bucheleres*, 171 Ill. 2d at 456). First, the law generally considers the likelihood of injury slight when the condition at issue is open and obvious, because it is assumed that persons encountering the condition will appreciate and avoid the risks. *Bucheleres*, 171 Ill. 2d at 456; *Ward v. K mart Corp.*, 136 Ill. 2d 132, 147 (1990). In contrast, if a danger is concealed or latent, rather than open and obvious, the likelihood of injury increases because people will not be as readily aware of such danger. We conclude that, because Petite Lake presents open and obvious risks to patrons, including those who dive from boats, the likelihood-of-harm factor in the duty analysis does not weigh in favor of imposing a duty to warn.

¶ 28    Second, the foreseeability of harm to others may be greater or lesser depending on the degree of obviousness of the risks associated with the condition. While injuries from drowning and diving might be anticipated wherever there are lakes, swimming pools, and other bodies of water, the legal concept of reasonable foreseeability of injury arising from open and obvious conditions takes into account that even young, unsophisticated, or immature people are generally assumed to appreciate the risks associated with such conditions and therefore exercise care for their own safety. *Bucheleres*, 171 Ill. 2d at 456-57. Moreover, simple foreseeability of injury is not, and has never been, dispositive on the issue of whether the law imposes a duty in negligence. *Bucheleres*, 171 Ill. 2d at 457. We conclude that the first two factors of the duty analysis weigh against imposing a duty upon defendants to warn against diving or to prevent diving in Petite Lake 400 feet from shore. With the narrow forgetfulness-or-distraction exception discussed in cases such as *Ward* and *Deibert*, the law does not require persons to protect or warn against possible injuries from open and obvious conditions, which by their nature carry their own "warning" of potential harm. *Bucheleres*, 171 Ill. 2d at 457. Plaintiff does not contend that the exception applies.

¶ 29    The last two factors in the duty analysis also weigh against imposing a duty on defendants under the circumstances of this case. These factors are the magnitude of the burden of imposing the duty and the consequences of such burden. The social utility of our lake areas is significant and the desirability of keeping them open to the public is an important concern in balancing the factors used in the analysis of duty. *Bucheleres*, 171 Ill. 2d at 457.

¶ 30    Defendants' alleged awareness that some patrons anchor their boats and dive headfirst without checking the water's depth into areas of the Chain O' Lakes far from shore does not translate into a legal duty to warn against diving into those waters. To prevent diving into shallow waters far from shore, defendants would be asked to (1) measure the water level and determine the topography of the lakes' bottoms, (2) post floating warnings and cordon off those areas of the lakes to show where it is unsafe to dive, and (3) reassess the water levels and lake bottoms as necessary, depending on their fluctuations. Requiring defendants to

undertake such steps, we believe, would create a practical and financial burden of considerable magnitude. Moreover, the consequences of placing such burden on defendants might include the curtailment of the public's access to Petite Lake and the Chain O' Lakes as a whole, to the detriment of the public at large. Therefore, based on our consideration of all the relevant factors, we conclude that the trial court did not err in declining to impose a tort duty upon defendants. See *Bucheleres*, 171 Ill. 2d at 458. Even assuming that all of plaintiff's well-pleaded facts are true, we hold that the complaint fails to state a cause of action for negligence because plaintiff failed to allege facts to establish that defendants owed plaintiff a duty to warn of diving into shallow water far from shore. See 735 ILCS 5/2-615 (West 2010); *La Salle National Bank*, 325 Ill. App. 3d at 790.

¶ 31 We note that our conclusion is consistent with Wisconsin decisions. In *Heimerl v. Waverly Beach, Inc.*, 2004 WI App 109, ¶ 6, 2004 WL 913833 (unpublished), the plaintiff was injured when he ran off the end of a 100-foot-long boat dock and dived headfirst into water that was less than 2½ feet deep. *Id.* ¶¶ 3-4. The plaintiff argued that the dock owner owed a duty to warn of the diving risk and that the danger was not open and obvious, because the plaintiff "could reasonably conclude that the water at the end of the dock was deep enough for diving because of the dock's length, because the dock included tires or buoys for docking boats, and because he observed boaters using the dock, and boats in the water between the end of the dock and the shore." *Id.* ¶ 4. The Court of Appeals of Wisconsin disagreed, reaffirming the well-settled principles that "[a] plaintiff who dives headfirst into water of unknown depth cannot recover for his injuries because he has confronted an open and obvious danger as a matter of law" and that "[t]he failure to see the bottom of a lake or other body of water constitutes an observable danger and, for a diver, is a signal that the water may be too shallow for safe diving." *Id.* ¶ 6; see also *Scheeler v. Bahr*, 164 N.W.2d 310, 313 (Wis. 1969) (where the plaintiff was injured from diving headfirst off a long pier into shallow murky water, the court held as a matter of law that "[a] plaintiff must be held to knowledge and appreciation of the risk likely to be encountered by plunging head first into the unplumbed depths of [a] murky lake").

¶ 32            D. Willful and Wanton Conduct

¶ 33 Plaintiff next argues that counts II and III state claims of willful and wanton conduct on the part of defendants. There is no separate and independent tort of willful and wanton conduct; instead, it is regarded as an aggravated form of negligence. *Krywin*, 238 Ill. 2d at 235. It appears that plaintiff has alleged willful and wanton conduct in anticipation of defendants' assertions of tort immunity.

¶ 34 FWA argued for dismissal under section 2-619(a)(9) of the Code based on immunity conferred by sections 2-201 and 3-108(a) of the Tort Immunity Act (745 ILCS 10/2-201, 3-108(a) (West 2010)). Section 2-201 provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2010). Section 3-108(a) provides that "[e]xcept as otherwise provided in this Act,

neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury *unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury*." (Emphasis added.) 745 ILCS 10/3-108(a) (West 2010). Willful and wanton acts show "actual or deliberate intent to harm" or, if not intentional, show "an utter indifference to or conscious disregard for a person's own safety or the safety or property of others." *Pfister v. Shusta*, 167 Ill. 2d 417, 421 (1995); see 745 ILCS 10/1-210 (West 2010).

¶ 35     The Sheriff argued for a section 2-619(a)(9) dismissal on the grounds that he had not engaged in willful and wanton conduct under section 1-210 and that he owed no special duty that would overcome the immunity conferred by section 2-103 of the Tort Immunity Act (745 ILCS 10/1-210, 2-103 (West 2010)). Section 2-103 provides that "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103 (West 2010).

¶ 36     Plaintiff does not allege that defendants intended to harm him. Rather, plaintiff argues that defendants acted with conscious disregard for his well-being. An unintentional willful or wanton act is committed under circumstances showing a reckless disregard for the safety of others such as, for example, when a party fails, after knowledge of an impending danger, to exercise ordinary care to prevent the danger or fails to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285 (2000). " 'More than mere inadvertence or momentary inattentiveness which may constitute ordinary negligence is necessary for an act to be classified as wilful and wanton misconduct.' " *Oelze v. Score Sports Venture, LLC*, 401 Ill. App. 3d 110, 122 (2010) (quoting *Stamat v. Merry*, 78 Ill. App. 3d 445, 449 (1979)). The party committing the willful and wanton act or failure to act " 'must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury.' " *Oelze*, 401 Ill. App. 3d at 122-23 (quoting *Bartolucci v. Falleti*, 382 Ill. 168, 174 (1943)).

¶ 37     Like in this case, the defendants in *Bucheleres* raised an affirmative defense of governmental tort immunity that provides immunity from actions sounding in negligence but not for willful and wanton conduct. *Bucheleres*, 171 Ill. 2d at 463. Our supreme court held that it need not consider issues involving statutory immunity or the sufficiency of the allegations of willful and wanton conduct, because the court's disposition of the case was premised on the absence of a common-law duty and the open-and-obvious doctrine. *Bucheleres*, 171 Ill. 2d at 463. For the same reasons, we need not decide whether tort immunity is affirmative matter defeating plaintiff's allegations of willful and wanton conduct.

¶ 38                                        III. CONCLUSION

¶ 39     For the reasons stated, the trial court did not err in dismissing the second amended complaint under section 2-615 of the Code for failure to state a claim upon which relief could be granted. See 735 ILCS 5/2-615 (West 2010). Under the very unfortunate circumstances

of this case, defendants did not owe plaintiff a duty to warn of the risk of diving headfirst from a boat into shallow water far from shore. The dismissal of plaintiff's second amended complaint by the circuit court of Lake County is affirmed.

¶ 40       Affirmed.