2022 IL App (2d) 210680-U
No. 2-21-0680
Order filed July 5, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| BEARCAT LEASING CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-AR-232 |
| | ) | |
| MIDWEST VEHICLE LOGISTICS, INC., | ) | Honorable |
| | ) | John G. Dalton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in dismissing plaintiff's complaint against defendant for property damage. First, the claims were not barred by a release signed by representatives of plaintiff's insurer but not by plaintiff. Second, plaintiff's failure to attach to its complaint certain evidentiary support for its allegations did not require dismissal.

¶ 2    Plaintiff, Bearcat Leasing Corp., appeals from the trial court's dismissal, with prejudice, of its complaint against defendant, Midwest Vehicle Logistics, Inc. For the reasons that follow, we reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4                                A. The Complaint

¶ 5 On March 24, 2021, plaintiff filed a two-count complaint against defendant. Count I, entitled "Breach of Bailment," alleged that, in October 2018, plaintiff and defendant "formed an agreement that provided for [defendant] to deliver a [vehicle] from [plaintiff] to one of [plaintiff's] lessees." Plaintiff transferred the vehicle, "valued at $42,500," to defendant's exclusive possession in good condition, and defendant accepted the vehicle. On October 24, 2018, the vehicle was "irreparably damaged" while in defendant's possession. Consequently, plaintiff had to sell the damaged vehicle for only $24,985. It claimed a "loss in value" of $17,515. Plaintiff also incurred $5510 in storage fees. Count I sought total damages of $23,025, plus costs.

¶ 6 Count II, entitled "Negligence," alleged that, on October 24, 2018, defendant's agent was driving the vehicle and had a duty to exercise reasonable care. Notwithstanding its duty, defendant's agent failed to maintain proper lookout and control. As a direct and proximate result, plaintiff suffered damages in the "loss in value" of the vehicle and the cost of storing the damaged vehicle before sale. Count II sought total damages of $23,025, plus costs.

¶ 7 B. Defendant's Motion to Dismiss

¶ 8 On September 1, 2021, defendant filed a motion entitled "Section 2-615 Motion to Dismiss." It raised two bases for dismissal: (1) plaintiff had released the claims against defendant, and (2) plaintiff failed to attach a "necessary and integral part of the pleading and allegations against [d]efendant," namely a certain lease agreement.

¶ 9 1. Release of Claims

¶ 10 Defendant first argued that the trial court should dismiss the complaint because plaintiff had released its claims against defendant. According to defendant, "[u]pon information and belief," on October 24, 2018, plaintiff was insured by "Zurich North America/Empire Fire and Marine Ins. Co." (Zurich) and "filed a subrogation claim with *** Zurich for the damages alleged in its

[c]omplaint *** as Claim No. 1510139660." "Upon information and belief, [p]laintiff received a total sum of $12,933.21 from its insurer, Zurich, pursuant to said claim for said damages." On July 30, 2020,

> "[d]efendant's primary insurer, Lloyd's of London, and its duly authorized agent adjuster, Custard Insurance Adjusters, *** settled the subrogation claim with *** [p]laintiff's insurer Zurich, and Zurich, by and through its claim representatives, Christina Uselding and/or Kelly Nusser, executed a General Release of All Claims, a true and correct copy of which, together with related correspondence, is attached as Group Exhibit 'A'."

Defendant argued that "[p]laintiff's insurer, Zurich, as a result of its subrogation payments to [p]laintiff, stands in the same position as [p]laintiff, and since [p]laintiff's insurer, Zurich, released all claims against [d]efendant, Zurich released the debt owed by [d]efendant, and [p]laintiff's complaint must be dismissed."

¶ 11    In support of this argument, defendant attached to the motion, "Group Exhibit 'A' ", which consisted of (1) a document entitled "General Release of All Claims" (the Release), (2) an e-mail, dated June 19, 2019, from Zurich to plaintiff, and (3) a letter, dated June 20, 2019, from Zurich to defendant's insurer.

¶ 12    The Release provided as follows:

> "KNOW ALL MEN BY THESE PRESENTS: That the Undersigned, being of lawful age, for sole consideration of Eight Thousand, Four Hundred, Thirty-Three Dollars and 21/100 Cents ($8,433.21) to be paid to Zurich North America / Empire Fire and Marine Ins. Co. (Claim number: 1510139660), do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns release, acquit, and forever discharge Midwest Vehicle Logistics, Inc., Certain Underwriters at Lloyd's London, Thompson Heath &

Bond, Ltd., Custard Insurance Adjusters and his/her/their/its agents, servants, successors, heirs, executors, administrators, and all other persons, firms, corporations, associations, or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses, and compensation whatsoever, which the Undersigned now has/have of which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen property damage and the consequences thereof resulting or to result from the accident, casualty, or event which occurred on or about 24th October 2018 (Date of Incident), at or near Knoxville, TN."

It provided the following "[b]reakdown":

"Paid to Date:            $12,933.21

Deductible:            $    500.00

File Total:            $13,433.21

Less Insured Deductible:      $ 5,000.00

Net Total Due:            $ 8,433.21"

It also provided that defendant was "responsible for remitting the payment of $5,000.00 (Insured deductible) to [Zurich]." It was signed by "Christina Uselding" and "Dakota Cox" and dated July 30, 2020.

¶ 13   The e-mail, dated June 19, 2019, from Zurich to plaintiff, indicated that it concerned "Supplement Estimate/Payment - Claim 1510139660" and advised plaintiff that "[t]he supplement [*sic*] repair estimate" had been processed and that Zurich would be "issuing payment in the amount of $3,677.86 to be sent to your attention [and] this amount includes towing and a portion of the storage." It contained the following breakdown:

"Estimate - $13,088.21

Towing - $195.00

Storage - $150.00

Deductible - $500.00

Initial Payment - $9,255.35

Supplement Due - $3677.86."

It further provided: "This claim has been submitted to our subrogation department for collection of your deductible." (Emphasis omitted.)

¶ 14 The letter, dated June 20, 2019, was on Zurich letterhead. It was addressed to "Lloyds of London/Custard Insurance" and signed by "Christina Uselding" as "Recovery Specialist" for "Empire Fire and Marine Ins. Co." It referenced "Claim Number: 1510139660"; "Insured: Bearcat Leasing Corporation"; and "Date of Loss: 10-24-2018." It stated: "Our investigation indicates that liability rests with your insured. A supplement has been issued. To date, our original demand is still outstanding with your company." It further indicated:

"Paid to Date: $12,933.21

Deductible:     $    500.00

File Total:     $13,433.21"

¶ 15                    2. Failure to Attach Lease

¶ 16 Defendant based its second argument in support of its motion to dismiss on plaintiff's failure to attach a certain lease agreement. Defendant alleged that "[u]pon information and belief," plaintiff's allegation that the vehicle was valued at $42,500 when defendant accepted possession of it was "based solely upon a written 'Open End Lease' leasing agreement." According to defendant, the agreement was "a necessary and integral part of the pleading" and plaintiff's failure to attach it warranted dismissal of the complaint.

¶ 17                          C. Plaintiff's Response

¶ 18    On September 29, 2021, plaintiff filed a response to the motion to dismiss. First, plaintiff

pointed out that, although defendant titled its motion as a motion to dismiss under section 2-615

of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), section 2-619(a)(6) of the

Code (*id.* § 2-619(a)(6)) governs a motion seeking dismissal based on a release. First, plaintiff

argued that the Release did not warrant dismissal because (1) the Release was signed…by

Christina Uselding and Dakota Cox, individually, (2) the Release did not mention plaintiff,

(3) defendant did not present any evidence of a subrogation agreement between plaintiff and

Zurich, and (4) even if there were a subrogation agreement between plaintiff and Zurich, there is

no evidence that the agreement included plaintiff's claimed damages. As for defendant's second

basis for dismissal, plaintiff argued that the complaint made no reference to a lease and that, even

if the claimed damages stemmed from a lease, that document would simply be evidence in support

of the allegation and thus would not need to be attached to the complaint.

¶ 19                          D. Defendant's Reply

¶ 20    In reply, defendant argued that the Release and additional documents attached to its motion

to dismiss established that the released claim belonged to plaintiff. Defendant argued that "[f]or

[p]laintiff to rely on the absence of a statement that the 'released claims belonged to [p]laintiff' is

disingenuous as best." Defendant acknowledged the "inartful wording of the release" but asserted

that the Release was prepared during the "unprecedented COVID pandemic," which was a relevant

fact to consider, "*especially since* [*p*]*laintiff does not deny any of the facts set forth in* [*d*]*efendant's*

[*m*]*otion or attachments*." (Emphasis in original.) Defendant further argued that plaintiff's

assertion that there was no subrogation agreement between plaintiff and Zurich ignored the

motion's attached uncontradicted documents. Defendant also argued that plaintiff did not identify

any interest that it retained outside of the claim filed with its insurer. As for its second basis for dismissal, defendant argued that the court should, at a minimum, "strike said valuation from [the c]omplaint and require an amended complaint."

¶ 21                                 E. Proceedings on Motion to Dismiss

¶ 22    On October 20, 2021, the parties appeared via Zoom on the motion. The trial court "BEING FULLY ADVISED IN THE PREMISES," granted defendant's motion and dismissed the complaint with prejudice. The record does not contain a transcript, or an acceptable substitute, from the proceedings. See Ill. S. Ct. Rule 323(c) (eff. July 1, 2017).

¶ 23    This timely appeal followed.

¶ 24                                         II. ANALYSIS

¶ 25    Plaintiff contends that the Release does not provide a basis for the trial court's dismissal of the complaint. Plaintiff argues that, because the Release does not name plaintiff, the Release does not bind plaintiff. Plaintiff further contends that, even if Zurich held via subrogation plaintiff's claims against defendant, defendant provided no evidence that Zurich had the right to subrogate all of plaintiff's claims against defendant.

¶ 26    The purpose of a motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) "is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003).[1] It admits the complaint's legal sufficiency but raises an affirmative defense or other matter that defeats the

---

[1]As plaintiff contends, (and defendant does not dispute), although defendant's motion to dismiss was entitled "Section 2-615 Motion to Dismiss," a motion for dismissal based on a release is governed by Section 2-619(a)(6) of the Code (735 ILCS 5/2-619(a)(6) (West 2020)).

plaintiff's claims. *Id.* As is relevant here, a motion under section 2-619(a)(6) of the Code asserts that "the claim set forth in the plaintiff's pleading has been released." 735 ILCS 5/2-619(a)(6) (West 2020). "If [the] defendant's motion to dismiss is based on a release, once [the] defendant shows the existence of a facially valid release, the burden then shifts to the plaintiff to prove that a material issue of fact exists which would invalidate the agreement." *Roberts v. Dow Chemical Co.*, 244 Ill. App. 3d 253, 256 (1993). "If, after considering the pleadings and affidavits, the trial judge finds that the [nonmoving party] has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1983).

¶ 27    When ruling on a motion to dismiss under section 2-619, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). Evidentiary facts asserted in a defense affidavit or other supporting evidence are deemed admitted unless the nonmoving party submits a counter affidavit or other supporting documents to refute those facts. *Kedzie & 103rd Currency Exchange, Inc.*, 156 Ill. 2d at 116. On appeal from a section 2-619 motion, the reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Id.* at 116-17. We review *de novo* the dismissal of a complaint under section 2-619. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

¶ 28    Before reaching the parties' arguments, we note that the record on appeal does not include a transcript, or an acceptable substitute, from the proceedings on the motion to dismiss. See Ill. S. Ct. Rule 323(c) (eff. July 1, 2017). Plaintiff, as appellant, bears the burden of presenting a sufficiently complete record of the proceedings to support its claim of error. *Foutch v. O'Bryant*,

99 Ill. 2d 389, 391 (1984); *Short v. Pye*, 2018 IL App (2d) 160405, ¶ 48. Although we resolve against plaintiff doubts arising from the record's incompleteness (see *Foutch*, 99 Ill. 2d at 392), our review here is limited to the pleadings, motions, and supporting documents, which are part of the record. See *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 11. In addition, the issues raised here present questions of law that we review *de novo* without showing deference to the trial court's reasoning. See *id.* Accordingly, the lack of a transcript, or acceptable substitute, from the proceedings does not hinder our review.

¶ 29    We turn to the merits. Plaintiff argues that, because defendant did not establish that plaintiff released the claims asserted in the complaint, the burden never shifted to plaintiff. We agree. "A release is a contract wherein a party abandons a claim to the person against whom the claim exists." *Unger v. Nunda Township Rural Protection District*, 135 Ill. App. 3d 758, 763 (1985). As a contract, contract-interpretation rules govern a release. *Gillilan v. Trustees for Central States, Southeast & Southwest Areas Pension Fund*, 183 Ill. App. 3d 306, 312 (1989). "This means that '[w]here a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids.' " *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21, (2003) (quoting *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984)). "Releases are strictly construed against the benefitting party and must spell out the parties' intention with particularity." *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2019 IL App (1st) 180697, ¶ 48.

¶ 30    As plaintiff notes, generally, a person who is not a party to a release will not be bound by its terms. See *Unger*, 135 Ill. App. 3d at 764. In *Unger*, the plaintiff brought an action against adjacent property owners and others to recover damages for the destruction by fire of trees on the

property that the plaintiff purchased under an installment contract. *Id.* at 760-61. When the fire occurred, the plaintiff had not acquired title to the property from the seller under the installment contract. *Id.* at 761. The seller signed a release for the fire damage in favor of one of the defendants. *Id.* The trial court, concluding that the seller, rather than the plaintiff, suffered the loss, granted summary judgment based on the seller's release. *Id.* at 761-62. We reversed on appeal. *Id.* at 764. First, we held that the plaintiff, not the seller, suffered the loss. *Id.* at 763. We then considered whether the release executed by the seller barred the plaintiff's action. *Id.* at 763-64. Noting that, "where no ambiguity is presented, the meaning of the agreement and the intention of the parties must be ascertained from the words employed therein," (*id.*) we stated:

> "Initially, we note that [the defendant] has offered no theory for the proposition that [the seller] had authority to enter in a release contract on [the] plaintiff's behalf. Even if [the seller] had had such authority, however, he did not exercise it. The release is unambiguous and by its terms binds only [the seller], his wife, and 'their heirs, executors and adminstrators.' [The p]laintiff does not fall into one of those categories and is not, therefore, bound by the release." *Id.* at 764.

¶ 31    Here, the unambiguous language of the Release established that "the Undersigned," in consideration of $8,433.21 "to be paid to [Zurich]," "release[d]" defendant

> "from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses, and compensation whatsoever, *which the Undersigned now has/have of which may hereafter accrue on account of or* in any way growing out of any and all known and unknown, foreseen property damage and the consequences thereof resulting or to result from the accident, casualty, or event which occurred on or about 24th October 2018 (Date of Incident), at or near Knoxville, TN." (Emphasis added.)

The Release is signed by "Christina Uselding" and "Dakota Cox." Based on the letter and e-mail attached to the motion, it appears that Uselding signed the Release on behalf of Zurich in her capacity as "Recovery Specialist."[2] To be sure, the letter and e-mail also suggest that Zurich was plaintiff's insurer at the time of the occurrence alleged in the complaint, that plaintiff filed a claim with Zurich concerning that occurrence, and that Zurich paid plaintiff $12,933.21 for that claim. The letter and e-mail further suggest that defendant was liable for plaintiff's loss and that Zurich pursued its subrogation rights with defendant's insurer, which resulted in the execution of the Release. Nevertheless, the Release on its face unambiguously binds only Zurich; plaintiff is not named. In its response brief, defendant does not directly acknowledge that the Release does not name plaintiff. Instead, without questioning the holding in *Unger*, defendant argues that it is "factually different." That might be. However, our holding in *Unger*—that the unambiguous terms of the release bound only the signing individual, his wife, and their heirs, executors, and administrators—is applicable here. Construing the unambiguous terms of the Release strictly against defendant, we cannot say that defendant has met its burden of establishing a facially valid release that bars plaintiff's claims.

¶ 32    Defendant contends that plaintiff's argument "ignores the well settled law of insurance subrogation actions." When an undisputed insurance contract is involved, "subrogation rights arise where (1) a third party has caused a loss and is primarily liable to the insured for the loss, (2) the insurer is secondarily liable to the insured due to an insurance policy, and (3) the insurer pays the insured under that policy, thereby extinguishing the debt owed by the third party." *Trogub v.*

---

[2]There is no reference to Dakota Cox anywhere in the record other than in the Release itself and in plaintiff's response to defendant's motion to dismiss.

*Robinson*, 366 Ill. App. 3d 838, 842 (2006). However, as plaintiff notes, even assuming that a right to subrogation exists, "[s]ubrogation of a claim does not by itself exclude the party who has the claim from bringing a suit if the insured retains some interest." *Brooke Inns, Inc. v. S & R Hi-Fi & TV*, 249 Ill. App. 3d 1064, 1078 (1993). Importantly, plaintiff's complaint seeks damages for "loss in value" of the vehicle *and* "storage" fees. Defendant argues that "[t]he record clearly shows that [plaintiff] received monies from its insurer for diminution of value, repair charges[ ] to the truck and for storage and towing charges." However, the letter and e-mail refer only to amounts paid for estimated "repair" costs and "a portion of the storage." Interpreting the pleadings and supporting documents in the light most favorable to the plaintiff, we cannot say that defendant has met its burden of establishing that plaintiff's claims fall within the scope of the Release.

¶ 33    Thus, construing the unambiguous terms of Release strictly against defendant, we cannot say as a matter of law that plaintiff—unnamed in the Release—released its claims against defendant. At most, defendant's motion and supporting documentation raised a genuine issue of fact as to whether the Release bound plaintiff and whether the released claims included the claims raised in the complaint. Accordingly, as defendant did not meet its burden of establishing that plaintiff's claims were barred by the Release, dismissal of the complaint with prejudice on this basis was error.

¶ 34    Plaintiff next contends that defendant's argument concerning plaintiff's failure to attach a certain lease agreement provides no basis for dismissal. We agree. Defendant alleged in its motion that, "[u]pon information and belief," plaintiff's allegation that the vehicle was valued at $42,500 when defendant accepted possession of it was "based solely upon a written 'Open End Lease' leasing agreement." Defendant asserted that the agreement was "a necessary and integral part of the pleading" and that plaintiff's failure to attach the agreement warranted dismissal of the

complaint. However, as plaintiff asserts, the complaint does not refer to a written lease. In addition, as plaintiff argues, the exclusion of documentary evidence from the complaint does not justify its dismissal. See *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 622 (1994) ("There is no law that every relevant document which counsel seeks to introduce as an exhibit at trial must be attached to his pleading, and indeed, such a requirement would be unworkable and imprudent.").

¶ 35    Finally, defendant requests that assess against plaintiff the costs that defendant incurred in the trial court and on appeal and impose a sanction of reasonable attorney fees against plaintiff under Illinois Supreme Court Rules 137(a) (eff. Jan. 1, 2018) (allowing sanctions for filing frivolous pleading, motion, or other document) and 375(b) (eff. Feb. 1, 1994) (allowing sanctions for frivolous appeals or appeals not taken in good faith or for improper purpose). We deny these requests.

¶ 36                             III. CONCLUSION

¶ 37    For the reasons stated, we reverse the judgment of the circuit court of Kane County, dismissing plaintiff's complaint with prejudice, and remand the cause.

¶ 38    Reversed and remanded.