Docket No. 84776–Agenda 29–September 1998.

BARBARA JACKSON, Indiv. and as Adm'r of the Estate of Jonathan Jackson, Appellant, v. TLC ASSOCIATES, INC., 

 Appellee.

Opinion filed December 31, 1998.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether the owner of a commercial bathing beach had a duty to protect one of its adult patrons, who was an experienced swimmer, from the risks associated with diving into the water from the shoreline near a submerged and unmarked pipe that was not visible from the surface. The circuit court held that the owner owed no such duty and entered summary judgment in the owner's favor. The appellate court affirmed with one justice dissenting. No. 3–97–0159 (unpublished order under Supreme Court Rule 23). We granted leave to appeal (166 Ill. 2d R. 315) and now reverse and remand for further proceedings.

The events which gave rise to this litigation took place on June 16, 1993, when Jonathan Jackson went swimming at Timberview Lake. Timberview is a “public bathing beach” within the meaning of the Swimming Pool and Bathing Beach Act (210 ILCS 125/1 
et seq.
 (West 1992)). It is owned and operated by defendant, TLC Associates, Inc. (TLC). On the date in question, TLC possessed a valid license from the Illinois Department of Public Health to operate the facility.

Timberview Lake is a relatively small body of water. It is more a pond than a lake and is man-made. Its shape resembles an elongated triangle with rounded edges. A buoyed rope separates its narrower upper portion from its wider lower portion. A sandy beach runs along the narrow end, and the water there is shallowest.

As one proceeds through the sandy beach area and past the buoyed rope, the depth of the lake increases. The water eventually becomes deep enough to accommodate two platforms, one of which is equipped with a diving board. Near the rope, however, the drop off is negligible. The area adjacent to the shoreline also remains relatively shallow. Even as far out as 16 feet the water is only 44 inches deep.

Throughout the portion of the lake beyond the buoyed rope, referred to by the parties as the “deep end,” the lake bottom is composed of silt. This gives the water a murky appearance and makes it impossible to see beneath the surface. A swimmer standing on the shore has no way to gauge the lake's depth or detect the presence of any submerged obstructions.

Jonathan Jackson was a 19-year-old adult and an experienced swimmer. He had been to Timberview on previous occasions and had recently witnessed a Timberview employee dive into the lake from the shoreline on the “deep” end of the lake. When Jonathan arrived at the lake on the day in question, he attempted to do the same thing. After paying his admission fee and proceeding to a concrete shelter next to the lake, Jonathan ran to a point on the shoreline a few feet past the buoyed rope on the “deep” side of the lake. He extended his arms and dove in. A witness described the dive as “just kind of a belly flop deal.”

The same witness testified in his deposition that during previous visits Jonathan had executed similar dives from the shoreline without incident. This time, Jonathan was not so fortunate. When he surfaced from the dive he called for help and had to be pulled to shore by other swimmers. He was transported to the hospital, where examination revealed that he had sustained cervical and thoracic spine fractures resulting in quadriplegia. He later died from complications related to those injuries.

Barbara Jackson, Jonathan's mother and the administrator of his estate, subsequently brought this action against TLC in the circuit court of McDonough County to recover damages for her son's injuries. In her complaint, Jackson alleged that TLC had been negligent in the way it maintained the lake; in not providing lifeguards; in failing to adequately warn swimmers that they should not dive into or enter the water in areas where hidden hazards might be present; and in “allow[ing] a dangerous obstruction to remain in an area where persons were allowed to swim and dive, when [TLC] knew or should have known of the dangerous obstruction.”

Jackson's theory of the case was that her son's injuries were caused when he hit his head on a submerged section of plastic pipe used by TLC to adjust the level of the water. The pipe was black in color and approximately two inches in diameter. It was not anchored down, its location was variable, and it did not always remain in the water. Sometimes the pipe was laid across the grass on the shoreline. On the day in question, however, it extended into the “deep” end of the lake from the buoy post near the point where Jonathan dove into the water. A witness present at the scene reported that the pipe ran along the shore for a short distance, then entered the water. It disappeared from view a few feet to the left of where Jonathan made his dive. An inspector with the Illinois Department of Public Health testified in his deposition that if the pipe were in place in the area of Jonathan's accident, as Jackson claims it was, it would have been a likely cause of his injuries.

After conducting discovery, TLC moved for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 1992)). As grounds for its motion, the company argued that it was entitled to judgment as a matter of law because it had no duty to prevent Jonathan from diving into the water and had no duty to warn him of the risk attendant to making such a dive. No duty was owed, in the company's view, because Jonathan was an experienced, adult swimmer who should have known better than to dive into murky water. According to TLC, the danger was open and obvious.

Following a hearing, the circuit court granted TLC's motion and entered summary judgment in favor of the company and against Jackson. As indicated at the outset of this disposition, the appellate court affirmed, with one justice dissenting. The appellate court reasoned that TLC owed no duty to Jonathan because, under this court's decision in 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435 (1996), an adult is expected to appreciate the risks of diving into a body of water that is murky and of uncertain depth, as the water here was. Although the court recognized that the existence of such an open and obvious danger is not an automatic bar to the finding of a legal duty on the part of the defendant who owns, operates or controls the property, the court held that this case did not present a situation where the landowner should have anticipated the harm despite its open and obvious nature. The court further held, in the alternative, that Jackson had failed to establish that her son had actually come into physical contact with a submerged pipe.

In reviewing the appellate court's judgment, we begin by noting that Jackson was not, in fact, required to establish the cause of her son's injuries in order to turn aside TLC's summary judgment motion. At the summary judgment stage, plaintiffs are not required to prove their cases. 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 256 (1996). The purpose of summary judgment is not to try a question of fact, but simply to determine whether one exists. 
Watkins v. Schmitt
, 172 Ill. 2d 193, 203 (1996). A motion for summary judgment should only be granted when the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 1992).

Because summary judgment is a drastic means of disposing of litigation, the court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party. 
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995). Summary judgment should not be allowed unless the moving party's right to judgment is clear and free from doubt. 
In re Estate of Hoover
, 155 Ill. 2d 402, 410 (1993). Accordingly, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. 
Espinoza
, 165 Ill. 2d at 114. Our review of an order granting summary judgment is
 de novo
. 
Espinoza
, 165 Ill. 2d at 113.

In the case before us today, there is a genuine issue of fact as to how Jonathan sustained his injuries. He undoubtedly hit his head on something when he dove into the lake. No other explanation can account for the severity of the damage to his spine. The real dispute concerns what exactly it was that he hit. It is possible that he merely struck the lake's bottom. At this stage of the proceedings, however, that is by no means certain. The reported presence of the submerged plastic pipe and Jonathan's proximity to that pipe when he entered the water support Jackson's claim that the pipe was responsible for what happened to her son. To the extent that the appellate court's judgment is based on the view that no genuine issue of fact remains, it must therefore be set aside.

Somewhat more problematic is the appellate court's conclusion that TLC owed no duty to Jonathan as a matter of law because the risks of diving into a body of water that is murky and of uncertain depth are open and obvious. The appellate court's analysis is founded on the principle of Illinois law which holds that persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious. Obvious dangers include fire, height, and bodies of water. 
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 447-48 (1996); 
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc
., 169 Ill. 2d 110, 118 (1995). The existence of an open and obvious danger is not a
 per se
 bar to finding that a defendant who owns, occupies or controls land has a duty to exercise reasonable care. In assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case. The factors relevant to the courts' imposition of a duty include the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant. 
Bucheleres
, 171 Ill. 2d at 456, citing 
Ward v. K mart Corp.
, 136 Ill. 2d 132, 140-41 (1990).

A body of water is deemed to present an open and obvious danger whether it is natural (see, 
e.g.
, 
Bucheleres
, 171 Ill. 2d 435 (Lake Michigan); 
Dowen v. Hall
, 191 Ill. App. 3d 903, 907 (1989) (Fox Lake)) or artificial (see, 
e.g.
, 
Mt. Zion State Bank & Trust
, 169 Ill. 2d 110 (above-ground pool); 
Cope v. Doe
, 102 Ill. 2d 278 (1984) (man-made retention pond); 
Osborne v. Claydon
, 266 Ill. App. 3d 434 (1994) (in-ground pool); 
Wingate v. Camelot Swim Club, Inc.
, 193 Ill. App. 3d 963 (1990) (man-

made duck pond)), clear or murky (see,
 e.g
., 
Mostafa v. City of Hickory Hills
, 287 Ill. App. 3d 160, 167 (1997) (danger posed by lagoon open and obvious even though murkiness prevented decedents from ascertaining its depth); 
Dowen
, 191 Ill. App. 3d at 907 (danger involved in “a flat dive off a pier into muddy waters of uncertain depth in a natural lake is open and obvious to a reasonable adult”). In addition, the water's danger is considered to be apparent not only to experienced swimmers (
Bucheleres
, 171 Ill. 2d 435), but even to very young children (see, 
e.g
., 
Englund v. Englund
, 246 Ill. App. 3d 468, 476 (1993) (danger of drowning in swimming pool obvious to three-year-old child)).

Although a body of water was involved in this case, we do not believe that the open and obvious doctrine is dispositive of Jackson's claims. Cases addressing the open and obvious danger of water are premised on the notion that bodies of water pose two particular types of risk: the risk of drowning and the risk of injury from diving into water that is too shallow. Neither of those risks is at issue here. The danger in this case, according to Jackson, stemmed from the presence of the submerged pipe, whose location was variable and could not be detected by swimmers. The existence of that hazard had nothing to do with the inherent characteristics of bodies of water; it stemmed solely from TLC's conduct.

We note, moreover, that in contrast to the Lake Michigan beaches in 
Bucheleres
, 171 Ill. 2d at 457, this is not a situation where the condition, by its nature, carried its own warning of potential harm. Under the record before us now, there is no reason Jackson's son or any other patron of Timberview Lake should reasonably have anticipated the presence of the underwater obstruction or the injuries it could produce. To the contrary, Timberview Lake was designed, intended, and used solely for recreational swimming. When TLC opened it to the public and charged admission fees for that purpose, patrons had the right to assume that the facility was properly prepared for their use and that TLC had taken appropriate measures to make it safe.

Compounding the danger posed by the submerged pipe was that fact that TLC personnel would periodically alter the pipe's location. One day a particular section of the lake might be free of obstruction, enabling patrons and employees to enter and exit there without incident. Witnessing that, a patron might naturally believe that the area was perfectly safe. The next day, however, the pipe might be moved to that spot, making even “belly flops” of the kind attempted by Jonathan tragically dangerous. Without any markings or warnings, patrons would have no way to assess that the risks had changed. Indeed, they would have no way of knowing that the risks even existed.

Under these circumstances, the likelihood of injury was great and the risk of injury reasonably foreseeable. TLC had no justification for imposing such a risk on its patrons. The threat of injury from the pipe could have been completely eliminated at virtually no cost or expense to TLC. Although the pipe once served a purpose in maintaining the lake, it was rendered unnecessary by the lake's permanent plumbing system, which was in place and operational at the time of Jonathan's accident. All that TLC needed to do was disconnect it and stow it on shore. It is difficult to see how any adverse consequences could result from requiring a landowner such as to TLC to bear such an insignificant burden.

For the foregoing reasons, the circuit and appellate courts were wrong to hold that TLC was entitled to summary judgment on the grounds that it owed no duty to Jackson's son. The judgments of the circuit and appellate courts are therefore reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.