# Illinois Official Reports

## Appellate Court

---

**Suchy v. City of Geneva, 2014 IL App (2d) 130367**

---

| | |
|---|---|
| Appellate Court Caption | WILLIAM SUCHY, Independent Adm'r of the Estate of Randy Suchy, Deceased, Plaintiff-Appellant, v. THE CITY OF GENEVA, THE GENEVA PARK DISTRICT, and THE COUNTY OF KANE, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-13-0367 |
| Filed | March 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendants, the City of Geneva, the Geneva park district and Kane County, did not have a duty of care to plaintiff's brother, who died after jumping below a dam into a river to save a drowning boy, because while the risks presented by a body of water are generally considered to be open and obvious and thus an exception to a general duty of care owed by a landowner in Illinois, the court applied the traditional duty analysis and found that the defendants were not negligent, since they neither created, altered, nor owned the dam, plaintiff did not allege that the danger was concealed below the water, and there already were warning signs in place. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-L-284; the Hon. Edward C. Schreiber, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

David C. Wise, of Burke Wise Morrissey & Kaveny, of Chicago, for appellant.

Amanda M. Hillmann, of Knight, Hoppe, Kurnik & Knight, Ltd., of Rosemont, for appellee City of Geneva.

Edward F. Dutton, of Park District Risk Management Agency, of Lisle, for appellee Geneva Park District.

Joseph H. McMahon, State's Attorney, of St. Charles (Joseph F. Lulves, Assistant State's Attorney, of counsel), for appellee County of Kane.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1    In 2011, decedent, Randy Suchy, died after he jumped into the Fox River in Geneva to save a drowning boy. Subsequently, plaintiff, William Suchy, as the independent administrator of decedent's estate, brought a personal injury/wrongful death action against defendants, the City of Geneva (City), the Geneva park district (Park District), and the County of Kane (County). The trial court dismissed plaintiff's complaint with prejudice, finding that: (1) the hidden danger from the aerated water in the river was an open and obvious danger; and (2) the municipalities were immune from liability pursuant to section 3-110 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-110 (West 2012)). Plaintiff appeals, arguing that: (1) the trial court failed to undertake a traditional duty analysis to determine whether defendants owed a duty; (2) the deliberate-encounter exception to the open-and-obvious doctrine applies and raises a factual question precluding dismissal; and (3) section 3-110 of the Tort Immunity Act does not immunize defendants from liability, where the Park District exercises control of the river and the site of decedent's death, the City has statutory jurisdiction over the river as well as the right to deny access, and plaintiff properly alleged that the County controlled the river. We affirm.

## I. BACKGROUND

### A. Plaintiff's Complaint

In his seven-count complaint, filed in 2012, plaintiff alleged as follows. For many years prior to August 5, 2011, in the Fox River, there was a low head dam commonly known as the Geneva Dam. The dam created extremely dangerous and potentially deadly currents in the water downstream, and defendants knew this and knew that many people are injured each year by drowning or nearly drowning at the downstream side of dams such as the Geneva Dam. Defendants knew that it was unsafe and potentially lethal for children or adults to be in the dam's downstream water, and they knew that the water and the land in close proximity to it could not be safely used. Defendants also knew that children and adults were unaware of the dangers of low head dams. Defendants purposefully and intentionally configured their land to cause children and adults to use the land in close proximity to the downstream water. Defendants had been repeatedly told that the access they provided to the downstream side of the dam was dangerous, but they persisted in causing access to the land in close proximity to the downstream side of the dam. Defendants had also been told that warning signs were inadequate to apprise children and adults of the dangers of using the land, and they refused to repair the signs or install new ones.

On August 5, 2011, Evan Schultz, age 12, was using the land in close proximity to the downstream side of the dam. Decedent saw Schultz drowning at the downstream side and jumped into the water to save the boy's life. He saved Schultz's life, but sustained injuries that resulted in his death. Plaintiff also pleaded that Schultz and decedent were intended and permitted users of defendants' property.

In his wrongful death counts (740 ILCS 180/1 *et seq.* (West 2012)) (counts I, III, and V), plaintiff alleged that defendants supervised, maintained, operated, managed, and controlled the river in one or more of the following ways: (1) the City exercised its rights to grant or deny access to third parties who wished to use the river, declared various activities unlawful (swimming, walking, standing, fishing, boating, or being in the river in certain locations and within a certain distance from the dam[1]), and had the power to participate in and object to modifications of the dam or its removal; (2) the Park District declared its control over all bodies of water located in or adjoining a park (and the river adjoins Old Mill Park, Bennett Park, and Island Park); exercised its rights to grant or deny access to third parties who might use the river; declared its authority to allow swimming, wading, and bathing only in accordance with its rules, regulations, and restrictions; declared various activities (swimming, wading, standing, and bathing) unlawful, except as designated by the Park District board and in accordance with its rules, regulations, and restrictions promulgated and posted; and declared that it had the power to grant or prohibit fishing in the river; and (3) the County had the power to take water from the river; participated in decisions as to how to modify or remove dams in the river; exercised its powers of protecting and managing the water quality and level therein; protected and managed the river for its beneficial use; protected and preserved water supplies for current and future generations; exercised its powers of preserving and improving the river

---

[1]City Ordinance section 6-2-6 provides: "It shall be unlawful for any person to swim, walk, stand, fish, boat or otherwise be located within the waters of the Fox River and within fifty feet (50') on either side of the dam located immediately north of the State Route 38 bridge (State Street Bridge)." Geneva Code of Ordinances, ch. 2, § 6-2-6(C) (2003).

to maximize its potential for wildlife, recreation, and other uses; and had the power to participate in and object to modifications of the dam or its removal.

¶ 7   Plaintiff further alleged that defendants acted willfully and wantonly and with a conscious indifference and utter disregard for the safety of others in one or more of the following ways: (1) persisting in causing and encouraging children and adults to use the land in close proximity to the downstream side of the low head dam when they knew that it was unsafe to do so; (2) refusing to close off access to the downstream side of the low head dam when they knew that closing off such access was reasonably necessary for safety and to prevent children and adults from being killed; (3) refusing to repair or maintain signs warning children and adults of the deadly dangers of the land in close proximity to the downstream side of the low head dam and warning all persons to stay out of the water in close proximity to the downstream side of the dam[2]; (4) failing to maintain adequate or reasonable fencing to prevent persons from entering the water in close proximity to the downstream side of the dam; and (5) failing to maintain adequate lifesaving devices in the area of danger at the dam.

¶ 8   According to plaintiff, as a proximate result of one or more of these willful and wanton acts and omissions, committed with conscious indifference and utter disregard for the safety of others, decedent suffered injuries that resulted in his death. He left surviving him brothers and sisters, all of whom sustained a loss of love, society, and companionship.

¶ 9   In his survival action counts (755 ILCS 5/27-6 (West 2012)) (counts II, IV, and VI), plaintiff realleged the allegations in his wrongful death counts and further asserted that decedent sustained personal injuries resulting in his death, including conscious pain and suffering, which would have entitled him to bring a cause of action and that this cause survived him.[3]

¶ 10   As to the County, plaintiff additionally alleged (in counts V and VI) that the municipality was responsible for planning and managing groundwater, surface water, potable water supplies, rivers, streams, floodplains, and wetlands. The County submitted a report to the state, describing various dam-related deaths and injuries. It further developed a countywide water protection plan for preserving and improving water quality in the river in order to maximize recreational use of the river. Plaintiff further alleged that the County disbursed to its citizens potable water from the river through public water supply systems. The County undertook restoration, construction, and improvement projects on the river, including, but not limited to, installation of tools to hold the toe of the sloop to minimize erosion and restoration of dams that cause stream erosion. The County further removed or planned for removal of several dams located on the river, including the North Batavia Dam, the South Batavia Dam, and the Brewster Creek Dam.

---

[2]In subsequent pleadings, plaintiff attached state-generated reports and photographs that reflected that there was posted signage adjacent to the river at the dam area, warning of hazardous currents and prohibiting swimming ("Warning, Hazardous Currents Present, Do Not Enter Spillway Area" and "Danger, Swift Water, Keep Away from Dam").

[3]In count VII, entitled "Respondents in Discovery," plaintiff further alleged that defendants "may have information essential to the determination of who should properly be named as an additional defendant in this action," and plaintiff added any future respondents in discovery pursuant to section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 2012)).

B. Defendants' Motions

¶ 12        Defendants moved to dismiss plaintiff's complaint. The Park District, on October 4, 2012, brought a combined motion under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012) (pleading insufficient in law)), the Park District argued that: (1) it owed no legal duty to warn of or protect against the risks presented by the river, as such risks are considered open and obvious as a matter of law to any person old enough to be allowed at large; (2) it owed no legal duty to inspect, repair, warn of, or protect against any allegedly unsafe conditions of the river and/or dam, as plaintiff did not adequately allege that the Park District owned or controlled either the river or the dam; and (3) pursuant to section 3-102(a) of the Tort Immunity Act (745 ILCS 10/3-102(a) (West 2012) ("a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition")), it owed no duty of care to decedent, where, based upon plaintiff's allegations, decedent was an unintended user of the river because the Park District had declared it unlawful to enter the water for any reason.

¶ 13        Pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012) (claim "barred by other affirmative matter avoiding the legal effect of or defeating the claim")), it argued that: (1) section 5 of the Rivers, Lakes, and Streams Act (615 ILCS 5/5 (West 2012)) confirmed that the Illinois Department of Natural Resources had exclusive jurisdiction and supervision over the river and that the Park District merely possessed land adjacent to the river and/or dam, but did not own or control the river or dam; (2) even if plaintiff's allegations were sufficient to state a viable claim, the Park District, as a mere possessor of adjacent land, was immune from liability pursuant to: (a) section 3-110 of the Tort Immunity Act (745 ILCS 10/3-110 (West 2012) ("Neither a local public entity nor a public employee is liable for any injury occurring on, in, or adjacent to any waterway, lake, pond, river or stream not owned, supervised, maintained, operated, managed or controlled by the local public entity.")) and (b) section 2-105 of the Tort Immunity Act (745 ILCS 10/2-105 (West 2012) ("A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety.")). The Park District requested that the court dismiss the counts directed against it (counts III and IV) with prejudice and sought a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 14        On October 9, 2012, the City brought a combined motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code. (Subsequently, the County was allowed to join the City's motion.) As to section 2-619 of the Code, it argued that: (1) it was immune from liability pursuant to section 3-110 of the Tort Immunity Act, where plaintiff did not allege that the City owned, supervised, maintained, operated, or controlled the river or dam, and where either (a) the federal government has exclusive dominion over the river, which is a federal navigable waterway, (b) the state has exclusive jurisdiction over the river, or (c) the City does not own the land adjacent to the river; and (2) pursuant to section 3-102(a) of the Tort Immunity Act,

the City had no duty to warn or protect plaintiff against any risks presented by the river, because decedent was not an intended or permitted user where the City, as plaintiff alleged, declared it unlawful to enter the river. The City argued pursuant to section 2-615 of the Code that it had no duty to warn decedent or to protect him against any risks presented by the river, because, as a matter of law, such risks are considered open and obvious to any adult.

¶ 15                                    C. Trial Court's Ruling

¶ 16        On March 21, 2013, the trial court granted defendants' motions and dismissed plaintiff's complaint with prejudice.[4] It found that defendants had no control over the river or dam, because the river and dam are owned by the state and maintained and controlled by the Department of Natural Resources. The court further found that, assuming that they were aware of the dangers presented by the river and dam and that they nevertheless encouraged the public to engage in recreational activities in the vicinity of the dam, defendants had no duty to warn or otherwise protect decedent against the open and obvious risks presented. Accordingly, the court granted defendants' section 2-615 motions to dismiss.

¶ 17        The court noted that, based on its no-duty finding, it did not need to reach the issue (in defendants' section 2-619 motions) of whether an immunity provision applied. However, it nevertheless addressed one of the alternative arguments. The court found that, pursuant to section 3-110 of the Tort Immunity Act and relevant case law, defendants' restriction or control of certain activities on, in, or near the river and dam did not constitute control or supervision of the waterway itself, which is owned and controlled by the state. Accordingly, the court granted defendants' section 2-619 motions to dismiss. Plaintiff appeals.

¶ 18                                        II. ANALYSIS

¶ 19        A motion to dismiss a complaint pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint by alleging that it fails to state a claim on which relief can be granted. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). A section 2-615 dismissal is proper where it is apparent that the plaintiff cannot prove any set of facts entitling him or her to relief. *Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 438 (2011). The test is whether the allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). When we review a motion filed pursuant to section 2-615, we accept all well-pleaded facts as true, as well as all reasonable inferences that arise from them. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. However, we will disregard all legal and factual conclusions that are not supported by specific factual allegations. *Id.* We review *de novo* a trial court's decision on a motion to dismiss pursuant to section 2-615. *Id.* The existence of a duty presents a legal question also subject to *de novo* review. *Mitchell v. City of Chicago*, 221 Ill. App. 3d 1017, 1020 (1991). Finally, we note that we review the trial court's judgment, not its reasoning, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

---

[4]It further terminated the Forest Preserve District of Kane County as a respondent in discovery.

¶ 20    To prevail on a common-law negligence claim, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that the defendant's breach was the proximate cause of injury to the plaintiff. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). Unless a duty is owed, there can be no recovery for negligence. *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992).

¶ 21    Plaintiff argues that the trial court erred in dismissing his complaint, where the court failed to undertake a traditional duty analysis to assess whether defendants owed decedent a duty. Had it undertaken such an analysis, plaintiff asserts, the court would have determined either that the "subsurface," man-made, aerated currents under the boil were not open and obvious, and, thus, defendants owed decedent a duty to warn or protect against the dangers, or that, at a minimum, their obviousness and the applicability of the deliberate-encounter exception were factual questions precluding dismissal under section 2-615 of the Code. Defendants[5] respond that they owed decedent no duty to warn of or protect against any risks presented by the river, because such risks are considered to be open and obvious to any adult (and even subjectively were, as decedent observed the risk of drowning firsthand, yet voluntarily and intentionally disregarded it by jumping into the water). The court found that defendants had no control over the river or dam, because the river and dam are owned by the state and maintained and controlled by the Department of Natural Resources. The court further found that, assuming that they were aware of the dangers presented by the river and dam and that they nevertheless encouraged the public to engage in recreational activities in the vicinity of the dam, defendants had no duty to warn or otherwise protect decedent against the open and obvious risks presented. For the following reasons, we conclude that, assuming, without deciding, that plaintiff adequately pleaded that any defendant had any control over the water and/or dam, the trial court did not err in finding that defendants owed decedent no duty.

¶ 22    "Duty is determined by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.' " *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996) (quoting *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990)). Persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries resulting from dangerous conditions that are open and obvious. *Id.* at 447-48; *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 17 (2010) (quoting Restatement (Second) of Torts § 343A(1) (1965)); see also *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 15 (open-and-obvious doctrine is an exception to general duty of care owed by a landowner in Illinois). The law assumes that persons will recognize the danger and take care to avoid the risk. *Id.* ¶ 16. "A condition is open and obvious where a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved." *Id.* Open and obvious dangers include fire, height, and bodies of water. *Bucheleres*, 171 Ill. 2d at 447-48; see *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 118 (1995) (holding that the defendant could reasonably expect that a six-year-old child would appreciate the risk represented by a swimming pool and, therefore, owed no duty arising out of the defendant's placement of a utility pedestal next to fence around pool). The determination of whether a danger is open and

<hr />

[5]The City and Park District each filed briefs with this court. On October 11, 2013, we granted the County's motion to join and adopt their briefs as and for its brief.

obvious is generally a question of fact, though it can be decided as a matter of law where reasonable minds could not disagree and based upon the objective knowledge of a reasonable person confronting the same condition. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027-28 (2005); *Harmon v. United States*, 8 F. Supp. 2d 757, 761 (N.D. Ill. 1998); see also *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 34 ("Where there is no dispute about the physical nature of the condition, whether a danger is open and obvious is a question of law.").

¶ 23    Again, bodies of water are deemed to present open and obvious dangers, whether they are natural or man-made. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 425 (1998). Further, water's dangers are considered to be apparent to both experienced swimmers and young children. *Id.* at 425-26. "Cases addressing the open and obvious danger of water are premised on the notion that bodies of water pose two particular types of risk: the risk of drowning and the risk of injury from diving into water that is too shallow." *Id.* at 426. For the open-and-obvious doctrine to apply, the condition, by its nature, must carry its own warning of potential harm. *Id.* Where it does not, the doctrine is not necessarily dispositive. *Id.* at 426-27 (reversing summary judgment for the defendant and holding that a patron of a commercial bathing beach could not have reasonably anticipated the presence of an underwater obstruction–a two-inch diameter, black plastic pipe used to adjust the water level–or the injuries it could produce, where the lake was intended to be used solely for recreational swimming and the defendant's personnel periodically moved the submerged pipe, which made it impossible for patrons to assess the risk of diving).

¶ 24    The mere existence of an open and obvious danger is not a *per se* bar to finding that a defendant who owns, occupies, or controls land has a duty to exercise reasonable care. *Jackson*, 185 Ill. 2d at 425; *Bucheleres*, 171 Ill. 2d at 449. In assessing whether a duty is owed, a court must still apply a traditional duty analysis to the particular facts of the case. *Jackson*, 185 Ill. 2d at 425. Relevant factors as to whether a duty exists include: (1) the likelihood of injury; (2) the reasonable foreseeability of such injury; (3) the magnitude of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Id.* "Nonetheless, for all practical purposes, *** if a danger is open and obvious, and neither exception applies, there is no duty." *Allen ex rel. Linder v. Martinez*, 348 Ill. App. 3d 310, 314 (2004). Thus, whether a duty exists to guard against harm from an open and obvious condition depends on whether an exception applies. *Sollami v. Eaton*, 201 Ill. 2d 1, 15-16 (2002). One exception is the deliberate-encounter exception, which provides that "harm may be reasonably anticipated when the landowner 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *Rusch v. Leonard*, 399 Ill. App. 3d 1026, 1036 (2010) (quoting Restatement (Second) of Torts § 343A cmt. f (1965)). The deliberate-encounter exception most often applies in cases involving economic compulsion or impetus. *Sollami*, 201 Ill. 2d at 16 (citing cases). The deliberate-encounter exception affects the foreseeability analysis–the second factor in the traditional duty analysis. See *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 396 (1998) ("finding that a landowner may reasonably be expected in certain instances to predict that an invitee may suffer harm from an open and obvious danger is conclusive only of the possessor's duty, and then only partially so, since foreseeability alone is not determinative of duty"); see also *Rusch v. Leonard*, 399 Ill. App. 3d 1026, 1028, 1036 (2010) (reversing summary judgment for the defendant construction company and holding that

exception applied where there was only one stairway to access the second floor of building and thus it was reasonable to expect an invitee/firemedic to encounter the known or obvious danger–carrying injured person down stairway and landings that did not have a handrail and were unsecured).

¶ 25 Before assessing the relevant factors, we review the case law upon which the parties rely. Plaintiff relies on *Ward v. Mid-American Energy Co.*, 313 Ill. App. 3d 258 (2000). In *Ward*, two teenage boys drowned after they entered a slough adjacent to the Mississippi River and below a dam owned and operated by the defendant. The boys had entered the water to retrieve a ball and were swept up by the currents. The plaintiffs alleged that the defendant was aware of the danger in the water, had created the dangerous currents, which were not apparent from the surface, and knew that the danger was not apparent. The plaintiffs also asserted that the defendant failed to place or maintain warning signs about the dangerous underwater currents. The trial court dismissed the plaintiffs' complaint, pursuant to section 2-615 of the Code, on the basis that the dangers presented by a body of water are open and obvious.

¶ 26 The reviewing court reversed and remanded, holding that the defendant owed a duty to warn. *Id.* at 262-63. The court noted that "the existence of an open and obvious danger is not a *per se* bar to finding that a landowner has a duty to exercise reasonable care." *Id.* at 260-61. Further, it noted that, in determining whether a duty exists, a court must still undertake a traditional duty analysis. *Id.* at 261. In assessing the first factor, the likelihood of injury, the court noted that it is generally slight when the condition is open and obvious, because "it is assumed that persons encountering the dangerous condition will appreciate and avoid the risk." *Id.* (further noting that obvious dangers associated with water include "strong currents, submerged obstacles, sudden drop-offs, etc."). However, in the case before it, the plaintiffs had alleged that the presence of the powerful underwater man-made currents was not apparent from the surface and that the danger was not open and obvious. *Id.* Thus, although the dangers associated with water were obvious, the likelihood of injury was at least moderate due to the *increased* risks caused by the *hidden* currents. *Id.* In addressing the second factor, the reasonable foreseeability of injury, the court noted that, generally, as the obviousness of the danger increases, the foreseeability of injury decreases, because people are expected to exercise due care and avoid obvious risks. *Id.* However, in that case, the foreseeability of injury was very high because, according to the complaint, the defendant knew of the currents, that the danger was not apparent, and of six previous drownings. *Id.* at 261-62. As to the third factor, the magnitude of the burden of guarding against injury, and the fourth factor, the consequences of placing that burden on the defendant, the court concluded that they were small (*i.e.*, warning signs). *Id.* at 262. Accordingly, the court held that the defendant owed a duty to warn the plaintiffs' decedents of the dangerous underwater currents allegedly produced by the defendant's dam. *Id.*

¶ 27 The *Ward* court further stated that *Lerma v. Rockford Blacktop Construction Co.*, 247 Ill. App. 3d 567 (1993), which held that no duty existed under similar facts, was overruled by *Jackson* to the extent that it held that no duty could ever exist when the injury involves a body of water. *Ward*, 313 Ill. App. 3d at 262. In *Lerma*, which defendants urge is controlling here and which plaintiff argues is flawed for failing to conduct the traditional duty analysis,[6] two

---

[6]But see *Sollami*, 201 Ill. 2d at 15, 17 (holding that the "open and obvious" doctrine implicates only the first two factors of the traditional duty analysis: likelihood and reasonable foreseeability of injury).

children entered a river near a dam and drowned downstream of the dam while attempting to rescue another child who had been playing in the river. The plaintiffs alleged that unseen hazards in the river, in the form of undercurrents, debris, or both, caused the decedents' deaths. They further alleged that operation of the dam's conduits altered the natural flow of the river, thereby creating dangerous undercurrents and undertows that were not visible from the surface and were capable of causing drowning. The defendant general contractor had opened the conduits to prevent water from flowing over the top of the dam. The plaintiffs alleged that the entire flow of the water was forced downstream through the conduits. They also asserted that the river's bottom was cluttered with debris from the construction project, the debris was not visible from the surface, and a person could become entangled in it and drown. Initially, the *Lerma* court generally noted that an entity *in control* of the premises, such as the defendant general contractor in that case, has a duty to keep its site safe and to be informed of its safety, but that the nature of the danger is dispositive and, in the case of open and obvious dangers, no duty exists. *Lerma*, 247 Ill. App. 3d at 573. According to the court, "it is a body of water *per se* that presents an obvious risk of drowning, not its attendant conditions, whether surface or subsurface, artificial or natural." *Id.* at 575. Bodies of water, the court further stated, are obvious dangers "to persons old enough to be at large precisely because of their unknown surface *or subsurface* elements." (Emphasis added.) *Id.* The test is the foreseeability of harm. *Id.* Affirming the section 2-615 dismissal of the plaintiffs' complaint, the court held that the open and obvious nature of the danger made the injuries unforeseeable and, thus, as to the defendant general contractor, no duty existed to warn of the dangers or to prohibit entry in the dam's vicinity. *Id.* at 573.

¶ 28    Relying on *Jackson*'s statement that, where a hazard is not related to the *inherent* characteristics of bodies of water and stems solely from the defendant's conduct, the "open and obvious" doctrine does not apply and a duty is owed (*Jackson*, 185 Ill. 2d at 426), the *Ward* court concluded that the defendant owed the plaintiffs' decedents a duty to warn of the dangerous underwater currents allegedly produced by the defendant's dam. *Ward*, 313 Ill. App. 3d at 263. *Ward* read *Jackson* to stand for the proposition that "liability may attach for injuries caused by hazards in bodies of water where the hazard: (1) could not be detected; (2) was not an 'inherent characteristic' of bodies of water; and (3) stemmed solely from the defendant's conduct." *Id.* Because the *Ward* plaintiffs alleged that the currents were not apparent from the surface and were man-made (by the defendant), their cause of action was not barred merely because the danger the defendant had created can also occur naturally. *Id.* (further noting that, on remand, the plaintiffs would still bear the burden of establishing that the defendant's conduct was the proximate cause of the boys' deaths); *cf. Bezanis*, 2012 IL App (2d) 100948, ¶¶ 24-30 (undertaking traditional duty analysis and upholding trial court's refusal to impose duty to warn of diving into shallow water far from shore, where, unlike *Jackson*, case did not involve a danger that the defendant created, but, instead, involved a danger inherent in a body of water–the risk of diving into shallow water).

¶ 29    Here, plaintiff argues that the "subsurface," man-made aerated currents "under" the boil were not open and obvious (and, thus, defendants owed decedent a duty) or, at a minimum, presented a factual question (given that they were man-made and hidden). Addressing the likelihood of injury, plaintiff argues that the trial court should have found that this factor–the likelihood of injury from dangerous currents "beneath" the surface and caused by the man-made dam–was at least moderate. As to the reasonable foreseeability factor, plaintiff

- 10 -

argues that he pleaded that defendants knew of the dangers, that they caused, invited, and encouraged people to use the water, and that they knew that the dangers were not known to users. The magnitude of the burden of guarding against it, plaintiff argues, is small, requiring only proper signs and warnings.

¶ 30    Defendants respond that the risk at issue here is the risk of drowning. They argue that a property owner owes no legal duty to warn of or protect against the open and obvious risk of drowning in a body of water. They contend that *Ward* is distinguishable. There, the defendant allegedly owned the dam that created the underwater currents. Defendants argue that, here, plaintiff did not and cannot direct such allegations against them. They further assert that in both *Ward* and *Jackson* the defendants owned the bodies of water as well as the instrumentalities that created the allegedly dangerous conditions within those bodies of water. In *Ward*, the defendant owned the slough and the dam in the area where the decedents drowned. In *Jackson*, the defendant owned the commercial public bathing beach, as well as the submerged plastic pipe that the plaintiff collided with and claimed was an invisible, subsurface danger. Defendants contend that the risk in *Jackson* was not the risk of drowning but the danger of colliding with a hidden, submerged object and that, for this reason, the supreme court rejected the open-and-obvious defense. *Jackson*, 185 Ill. 2d at 426; *cf. Bezanis*, 2012 IL App (2d) 100948, ¶ 24 (risk was of diving into shallow water, which is an inherent characteristic of water; danger was not one that stemmed from the defendant's conduct).

¶ 31    As to the foregoing case law, we agree with defendants that this case is more like *Lerma* than *Ward* (again, assuming, without deciding, that defendants exercised any control over the river and/or dam). Here, decedent, like the decedents in *Lerma*, drowned downstream from a dam while attempting to rescue a child. The *Lerma* plaintiffs had alleged that unseen hazards in the river (undercurrents and/or debris) caused the deaths and that the defendant contractor, which controlled the premises, had caused the undercurrents. In affirming the section 2-615 dismissal of the plaintiffs' complaint, the *Lerma* court concluded that the open and obvious nature of the danger made the injuries unforeseeable and that the defendant contractor owed no duty to warn or prohibit entry. *Lerma*, 247 Ill. App. 3d at 573. We disagree with plaintiff (and *Ward*) that *Lerma* held that there is never a duty owed when the injury involves a body of water. *Ward*, 313 Ill. App. 3d at 262. The *Lerma* court did not explicitly state as such and noted that the foreseeability of injury is the proper focus. Further, the facts in *Lerma* involved dangers that are inherent in bodies of water and, thus, there was no need for the court to address other potential scenarios.

¶ 32    In *Ward*, in assessing the first factor, the likelihood of injury, the court determined that it was at least moderate because the currents were hidden. *Id.* at 261. In assessing the second factor, the court concluded that it was very high because, according to the complaint, the defendant knew of the dangerous condition and that it was not apparent and further knew of six previous drownings. *Id.* at 261-62. Finally, the third and fourth factors, which assessed the burden on the defendant, were small (*i.e.*, warning signs). *Id.* at 262. We believe that *Ward* is distinguishable because the defendant in that case allegedly created the dangerous underwater currents and owned the dam. Neither one of these allegations has been directed against defendants in this case. Indeed, the *Ward* court noted that "liability may attach for injuries caused by hazards in bodies of water where the hazard: (1) could not be detected; (2) was not an 'inherent characteristic' of bodies of water; and (3) stemmed solely from the defendant's conduct." *Id.* at 263. Even assuming, without deciding, that defendants here exercised some

- 11 -

control over the river and/or dam, plaintiff has not alleged that the currents in the river were created by any defendant. Thus, the pleadings here fail the test in the case that plaintiff urges controls.

¶ 33    We agree with defendants that plaintiff failed to adequately plead that the danger here was anything other than open and obvious. However, as noted, the existence of an open and obvious danger is not a *per se* bar to finding that a landowner has a duty to exercise care. *Jackson*, 185 Ill. 2d at 425-26. We must still apply the traditional duty analysis. *Id.* at 425; *Bezanis*, 2012 IL App (2d) 100948, ¶ 26. Turning to the first factor in that analysis–the likelihood of injury–generally this is slight where a condition is open and obvious, because it is assumed that persons encountering the danger will appreciate and avoid the risk. *Bucheleres*, 171 Ill. 2d at 456. However, where a danger is concealed or latent, the likelihood of injury increases because persons will not be readily aware of such danger. *Id.* Here, as noted, the water and dam (including water rushing over the dam) are open and obvious conditions and, thus, the likelihood of injury is low. Plaintiff pleaded that the dam "created extremely dangerous and potentially deadly currents in the water at the downstream side of the dam." Elsewhere, he referred to the "dangers of low head dams" and pleaded that children and adults did not know of the dangers of low head dams and that the water and the land near the water could not be used safely. However, nowhere in his second amended complaint did he plead that the dangers were not apparent from the surface or were concealed or latent. See *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 82 (1988) (in assessing a dismissal under section 2-615 of the Code, "[f]acts which are not well pleaded will not be considered by the court [citation], and conclusions of law or fact unsupported by specific facts in the record are not deemed to be admitted as true"). Other than in a subsequent filing,[7] plaintiff raises for the first time on appeal the "fact" that the danger was hidden. In contrast, in *Ward*, upon which plaintiff relies, the plaintiffs did allege that the dangerous currents in the water were not apparent from the surface, and the reviewing court relied on this assertion in concluding that the foreseeability of injury was "very high." *Ward*, 313 Ill. App. 3d at 260-62. Even if he had so pleaded, we conclude, as noted above, that this case is more like *Lerma* than *Ward* and that this factor weighs against finding a duty. Significantly, the dangerous undercurrents in *Ward* were, again, created by the defendant contractor when it opened the conduits to *prevent water from flowing over the dam*. Here, there is *no* such allegation and, as further reflected in photographs plaintiff submitted with his pleadings, water *flowed* over the dam. In the absence of any alterations by defendants, the risks presented by the dam and river here were nothing other than risks inherent in bodies of water and dams (*i.e.*, drowning and diving into shallow water). The likelihood of injury was, therefore, slight because the dangers were open and obvious. *Bucheleres*, 171 Ill. 2d at 456.

¶ 34    The second factor–the foreseeability of harm to others–depends on the degree of obviousness of the risks. The test is an objective one: what the possessor may reasonably expect of the plaintiff. *Id.* at 456-57. Further, pursuant to *LaFever*, we also address the deliberate-encounter exception in assessing this factor. *LaFever*, 185 Ill. 2d at 396. Finally, the supreme court has noted that "simple foreseeability of injury is not, and has never been, dispositive on the issue of whether the law imposes a duty in negligence." *Bucheleres*, 171 Ill.

---

[7]Only in his response to defendants' motions to dismiss did plaintiff refer below to the currents created by the dam as being "underwater."

- 12 -

2d at 457. We conclude that the foreseeability of harm to others is low here. Defendants could not have reasonably expected decedent to jump into the water near the dam, which presented the risks of drowning and diving into shallow water, which are "inherent characteristic[s] of bodies of water and *** danger[s] that defendants did not create." *Bezanis*, 2012 IL App (2d) 100948, ¶ 24. Furthermore, although "it is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position" (*Williams v. Foster*, 281 Ill. App. 3d 203, 207 (1996) (addressing the rescue doctrine and further noting that the rescuer might incur injuries in doing so and, if the defendant is negligent toward the rescuee, he or she is also negligent toward the rescuer)), there is generally no legal duty to rescue (see, *e.g.*, *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19 (individuals do not owe an affirmative duty to protect or rescue a stranger)) and, thus, no legal compulsion. (And there was clearly no economic compulsion here.) Thus, the deliberate-encounter exception, which, again, requires the presence of compulsion or impetus (*Sollami*, 201 Ill. 2d at 16-17), does not apply. In sum, we disagree with plaintiff that it is highly (or even moderately) foreseeable that a reasonable person in decedent's position would conclude that the advantages of jumping into the water, despite its open and obvious inherent dangers, to save another person's life would outweigh the risk of drowning himself (or sustaining injuries that subsequently took his life), where there was no compulsion to do so.

¶ 35     As to the third factor–the magnitude of the burden of imposing the duty–and the fourth factor–the consequences of such burden–it has been held that the cost of fencing off a seawall or enforcing a diving prohibition with increased personnel and warnings was too considerable a burden, where a park district was aware that some beach patrons congregated near the ledges and dived therefrom. *Bucheleres*, 171 Ill. 2d at 457-58. The supreme court further held that the consequences of placing any such burden on a park district might include restrictions on public access to the lakefront and beaches, to the public's detriment. *Id.* at 458; *cf. Ward*, 313 Ill. App. 3d at 260, 262 (magnitude and consequences small, where the plaintiffs alleged that the defendant failed "to place or maintain warning signs regarding the dangerous underwater currents"). Here, plaintiff alleged that the City purposefully and intentionally configured its land to cause children and adults to use the land in close proximity to the water on the downstream side of the dam, knew that the warning signs were inadequate to apprise children and adults of the dangers of using that land and water, and refused to repair its signs or install new ones. Plaintiff also alleged that the City refused to close off access to the downstream side, failed to maintain adequate fencing to prevent persons from entering the water in close proximity to the downstream side, and failed to maintain adequate lifesaving devices or call boxes in the area of danger at the dam. We conclude that the final two factors weigh somewhat against imposing a duty on defendants. As plaintiff concedes, there are currently warning signs in place, although they are, according to plaintiff, inadequate. Although signs alone constitute only a small burden (*Ward*, 313 Ill. App. 3d at 262), the installation of fences and other measures, as noted in *Bucheleres*, constitutes a considerably more significant burden.

¶ 36     Therefore, we conclude, based on our consideration of the aforementioned factors, that the trial court did not err in finding that defendants owed decedent no duty. Assuming that all of plaintiff's well-pleaded facts are true, his complaint failed to state a cause of action for negligence because he failed to allege facts to establish that defendants owed decedent a duty to warn of or protect against the risks presented by the river and dam.

¶ 37        Although the parties also address in their briefs several provisions of the Tort Immunity Act, we do not reach the issues, because we conclude that defendants owed decedent no duty. The existence of a duty and the application of immunity are separate issues. *Romine v. Village of Irving*, 336 Ill. App. 3d 624, 627 (2003). The Tort Immunity Act does not impose new duties on municipalities; rather, it restates and codifies common-law principles. *Mostafa v. City of Hickory Hills*, 287 Ill. App. 3d 160, 168 (1997). The distinction between a duty and immunity is critical "because only if a duty is found is the issue of whether an immunity or defense is available to the governmental entity considered." *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 46 (1998). Where the defendants owe no duty, we need not reach the immunity issue. *Vega v. Northeast Illinois Regional Commuter R.R. Corp.*, 371 Ill. App. 3d 572, 582 (2007). Accordingly, we affirm the dismissal of plaintiff's complaint.

¶ 38                                III. CONCLUSION

¶ 39        For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 40        Affirmed.