2025 IL App (2d) 240687
No. 2-24-0687
Opinion filed October 21, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| AMANDA V. WRIGHT, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-L-372 |
| | ) | |
| THE GURNEE PARK DISTRICT, | ) | Honorable |
| | ) | Joseph V. Salvi, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Amanda V. Wright, was injured when she fell on a tree stump on property owned by defendant, the Gurnee Park District. The injury occurred at Prairie Oaks Park, a multi-use property that includes a playground, a paved trail system, and natural areas for passive recreation. The tree stump at issue was in a natural area of the park (Property) directly behind the home of plaintiff's brother, Tobias Wilson. Plaintiff filed a personal injury suit. Defendant filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2022)), arguing that (1) plaintiff was neither an intended nor permitted user of the Property, (2) no duty was owed because the condition and risk of the area were open and obvious, and (3) defendant was not guilty of willful and wanton conduct and was thus immune under the Local Governmental and Governmental Employees Tort Immunity

Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2020)). The trial court granted defendant's motion on the first two grounds, and plaintiff appealed. For the following reasons, we affirm.

¶ 2                                     I. BACKGROUND

¶ 3                                     A. The Complaint

¶ 4      In May 2021, plaintiff filed a complaint against defendant and the Village of Gurnee, which the trial court dismissed on plaintiff's motion. Subsequently, plaintiff filed a three-count first amended complaint against defendant only. Defendant filed a motion to dismiss the first amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). In July 2022, the trial court granted the motion to dismiss counts I and III but denied the motion to dismiss count II. In her second amended complaint, filed in August 2022, plaintiff alleged one count of willful and wanton conduct by defendant. Defendant filed a motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)), which the trial court denied in December 2022. Thereafter, defendant filed an answer to plaintiff's second amended complaint and asserted affirmative defenses, including the Tort Immunity Act. Defendant filed a motion for summary judgment in April 2024, which the trial court granted on June 14, 2024.

¶ 5      Plaintiff's second amended complaint alleged the following. As a result of defendant's willful and wanton acts and/or omissions, plaintiff "tripped over unkempt grass and a raised and uneven tree stump, causing her to trip and fall directly to the ground below." The fall caused plaintiff severe and permanent injuries requiring extensive medical consultations, pain and suffering, lost income, and incurred expenses related to her medical treatment. Defendant engaged in willful and wanton conduct when it failed to adequately remove the stump that caused plaintiff's fall and knew or should have known that it was a hazard to pedestrian traffic. Plaintiff alleged that

defendant was willful and wanton in failing to warn pedestrians of the hazard, failing to grind down and completely remove the stump, and failing to trim "unkempt grass and overgrown shrubbery" that were concealing the hazard.

¶ 6                                    B. Plaintiff's Deposition

¶ 7      Plaintiff testified that, on the day of the incident, June 13, 2020, she was visiting the home of her brother, Tobias Wilson. Defendant's Property behind Tobias's home is part of a lightly wooded, grassy area that leads to a trail that connects to Prairie Oaks Park, a recreational property owned and maintained by defendant.

¶ 8      Plaintiff has lived in Gurnee since 2013. Her brother lived there before she moved to the area. They live a seven-minute drive apart and often visit each other's homes. Tobias had two children at home who are around the same age as plaintiff's children.

¶ 9      On the day of the incident, plaintiff and her two youngest children visited Tobias. She testified it was a nice day and she hoped her children could play outside with their cousins during the early days of the COVID-19 pandemic. Although plaintiff had been to Tobias's home many times, she had rarely been at the back of the house—and on those few occasions she remained on the deck. Plaintiff had not been in the grassy part of the backyard until the day of the incident.

¶ 10     Plaintiff testified that Tobias had specifically invited her so that her two youngest children could play badminton with her brother's family. Instead of erecting the badminton net on Tobias's property, plaintiff and Tobias erected the net on defendant's Property behind his home. The children were not interested in playing badminton, however, so plaintiff and Tobias played together. Tobias won the first game, and the siblings switched sides for a second game.

¶ 11     Plaintiff testified her brother had cautioned her to be careful around an area she described as having taller grass. She believed it was a "shrub" or "bush" that was to the side of where they

were playing. When the shuttlecock landed near the "shrubbery," plaintiff walked directly to it and bent down to pick it up. Plaintiff's left foot hit the tree stump, and she fell. Plaintiff testified she had instinctively tried to catch herself as she fell and she heard and felt her left wrist break.

¶ 12    Plaintiff acknowledged there were numerous, obvious hazards where they constructed the badminton net. Prior to the incident, she had not investigated the hazards, including the tree stump. Plaintiff could tell that defendant's Property had been mowed recently. Plaintiff was familiar with the website for the park district but had not contacted anyone regarding her plan to erect the badminton net on park property.

¶ 13                                C. Tobias's Deposition

¶ 14    Tobias testified that he owned the home at 5032 Prairie Oak Drive on the date of the incident. Tobias noted that he and his family generally do activities in the front yard. He agreed with plaintiff's characterization of him that he tries to have a "fun" house and has many games for his children. His backyard slopes down towards defendant's Property, so he decided with his wife and plaintiff to erect the badminton net on the flatter park district Property on the day of the incident.

¶ 15    While he lived in the home for several years, Tobias testified that he did not pay much attention to his backyard and the park land beyond. He would mow the lawn as needed, but never beyond his own property line. Tobias did not have detailed memories of the game with plaintiff but described it as casual and not competitive. When plaintiff fell, Tobias heard her arm break and drove her to the hospital.

¶ 16                                D. Becker's Deposition

¶ 17    Steven Becker testified he had worked for defendant since 1996 and was the grounds operations supervisor in the summer of 2020. Becker has several associate degrees related to his

position, including arboriculture, landscape maintenance, turf maintenance, and natural areas management. He is also a certified park and recreational professional and a certified arborist. In his role, Becker testified he would walk through all 400 acres of park district property on at least a monthly basis.

¶ 18     Becker testified he was very familiar with defendant's Property behind 5032 Prairie Oak Drive. The Property was often wet because sump pumps from surrounding homes drain into the area. Residents often dump branches from their yards onto the Property. He worked with other employees to seed the grass and plant oak trees in the area; turning it from "an absolute mud pit" with invasive species into a grassy, wooded area.

¶ 19     Becker testified he was notified of a downed tree on the Property in September 2018. He and another employee "processed the tree" by removing limbs, cutting the trunk into smaller pieces, and cutting the stump down as low as possible. Becker remembered the tree was a very large Boxelder, an invasive species not planted by defendant, and the stump had many jagged splinters before he cut it. While he might remove stumps entirely in areas with high traffic, Becker testified there was no need to remove this stump because it was in a low maintenance, low traffic area. There was also no need to trim weeds around the stump because it was clearly visible. There had been no reports of anyone tripping on the stump before plaintiff. When shown photos of the stump taken a few days after the incident, Becker testified the stump was clearly visible despite slightly taller grass and wood violets, a low-growing wildflower.

¶ 20     When Becker was notified of plaintiff's injury, he contacted the Joint Utilities Location Information for Excavators (JULIE) to have the area around the stump inspected for underground utilities. Because there were utilities directly below the stump, Becker had to be very careful removing it.

¶ 21                            E. Lukowicz's Deposition

¶ 22    Justin Lukowicz testified he was a full-time landscaper for defendant in 2020. Normally there were seasonal employees to help with landscaping and maintenance. However, the COVID-19 pandemic had left defendant short staffed. As a result, during the summer of 2020, Lukowicz was solely responsible for mowing half of the 400 acres of park land. Therefore, he generally trimmed less than before.

¶ 23    Lukowicz testified that, on June 12, 2020, the day before the incident, he spent 7.5 hours mowing Prairie Oaks Park and attached park property, including the grassy, wooded area behind Tobias's property. While there would normally be another crew member to assist, Lukowicz testified that they would not have trimmed weeds by any trees in that area, including by the tree stump on the Property. Trimming and edging were reserved for areas with higher traffic, such as playgrounds and athletic fields.

¶ 24    Lukowicz testified that his responsibilities included inspecting park property for hazards as he landscaped. If he found something, he would immediately report it to his supervisor. While he would not have driven his mower over any stump for fear of damaging defendant's equipment, he testified he did not believe the stump on the Property was a hazard. Patrons sometimes informed Lukowicz of park-related issues, but he never received complaints about the Property's landscaping.

¶ 25                            F. Owens's Deposition

¶ 26    Kraig Owens testified he was employed by defendant as a project and risk manager in June 2020. He was promoted to director of parks and planning in December 2020. Owens testified that it had been standard practice by defendant to grind down tree stumps in high-traffic areas, but stumps in other areas were either left to decompose naturally or were left to be ground down to

woodchips in the future. When the tree fell on the Property in 2018, the stump was cut down as close to ground level as possible.

¶ 27 Owens testified that defendant's operations changed in the summer of 2020. By June 2020, playgrounds and basketball courts were closed to comply with pandemic restrictions. Seasonal hiring was halted. The full-time landscaping employees worked to mow the grass on over 400 acres of parkland each week. The employees would trim trees as necessary, maintain asphalt pathways, and generally keep defendant's properties in good repair.

¶ 28 Owens testified that the rules of Prairie Oaks Park, as listed on defendant's website, state that games and sports are only allowed in designated areas. Games and sports are not allowed in other areas. If a member of the public had requested to play badminton on the Property, Owens testified he would have directed them to the large open field nearby that was dedicated to recreational play.

¶ 29 Owens testified that he received a report of the June 13 incident on June 18, 2020. He went to the Property that day and took photos of the stump. Owens testified that he believed the stump was obvious, but he had it removed since plaintiff had reported that she tripped over it. This was the only complaint related to the stump on the Property, according to Owens.

¶ 30                    G. Motion for Summary Judgment

¶ 31 On April 1, 2024, defendant filed a motion for summary judgment pursuant to section 2-1005 of the Code. 735 ILCS 5/2-1005 (West 2022). After a hearing, on June 14, 2024, the trial court granted the motion and held that (1) under section 3-102 of the Tort Immunity Act (745 ILCS 10/3-102 (West 2020)), Gurnee Park District Ordinance Code § 5.01 (approved January 17, 2017), and park district rules, plaintiff was neither an intended nor permitted user of the park, and (2) the defect was open and obvious. Plaintiff filed a motion to reconsider on June 14, 2024. The trial

court denied the motion and reaffirmed judgment in favor of defendant on October 10, 2024. A bystander report of the arguments and findings of the trial court was entered on February 13, 2025. This timely appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33    Plaintiff appeals, arguing that she was an intended and permitted user of the park and the tree stump was not an open and obvious condition. Although the trial court had not addressed the issue, plaintiff also argues that defendant's conduct in failing to "remove unkempt grass and shrubbery" rose to the level of willful and wanton conduct. For reasons that follow, we affirm the trial court.

¶ 34                                 A. Plaintiff's Brief

¶ 35    We begin by addressing defendant's argument that plaintiff's statement of facts violated Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) because it is both argumentative and fails to provide this court with an understanding of the case. Defendant notes that plaintiff's statement of facts is a single paragraph that cites only the statement of facts in one of plaintiff's responses below—and repeats the same factual misrepresentations—and not the deposition testimony or facts identified during discovery. Defendant therefore posits that we should disregard plaintiff's statement of facts in its entirety.

¶ 36    Moreover, we *sua sponte* note that plaintiff's brief also boldly claims that "[t]his appeal does not involve any statutes" in the "Statutes Involved" section as required by Illinois Supreme Court Rule 341(h)(5) (eff. Oct. 1, 2020). This is incorrect. The trial court specifically cited the Tort Immunity Act and the Gurnee Park District Ordinance Code when granting summary judgment. Plaintiff may wish to argue that these statutes should not apply, but it is fallacious to claim that no statutes are involved in the immediate matter. The Tort Immunity Act is central to this case.

¶ 37    After reviewing plaintiff's brief, we agree with defendant that plaintiff's statement of facts is woefully lacking. The record is almost 900 pages in length and includes numerous depositions, exhibits, and filings across over three years of litigation. The statement of facts in plaintiff's brief was so insufficient as to require a considerable amount of effort from both defendant and this court to recreate the facts from the record.

¶ 38    Illinois Supreme Court rules "are not suggestions; rather, they have the force of law, and the presumption must be that they will be obeyed and enforced as written." *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). Failing to comply with the rules regarding appellate briefs is not an inconsequential matter. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005). The purpose of the rules is to require parties to proceedings before a reviewing court to present clear and orderly arguments so that we may properly ascertain and dispose of the issues involved. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. "Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal should the circumstances warrant." *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America*, 2020 IL App (2d) 190034, ¶ 28. We decline to strike any portion of the brief or dismiss the appeal, but we will disregard the noncompliant portions of plaintiff's brief. We strongly admonish plaintiff's counsel to carefully follow the requirements of the supreme court rules in future submissions. Failure to comply is unfair to this court, opposing counsel, and one's client.

¶ 39                                    B. Summary Judgment

¶ 40    Summary judgment may be granted when the pleadings, depositions, admissions, and affidavits, viewed in the light most favorable to the nonmovant, fail to establish that a genuine issue of fact exists, therefore entitling the moving party to judgment as a matter of law. 735 ILCS

5/2-1005(c) (West 2022); *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. The party moving for summary judgment bears the initial burden of proof. *National Tractor Parts Inc. v. Caterpillar Logistics Inc.*, 2020 IL App (2d) 181056, ¶ 38. Summary judgment should be denied where a reasonable person could draw divergent inferences from undisputed facts. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. "Summary judgment is a drastic means of disposing of litigation." *Wright v. Waukegan Community Unit School District 60*, 2022 IL App (2d) 210334, ¶ 25 (citing *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423 (1998)). As such, the movant's right to summary judgment must be clear and free from doubt. *Jackson*, 185 Ill. 2d at 424. Rulings on motions for summary judgment are reviewed *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Under the *de novo* standard of review, we perform the same analysis as the trial court and give no deference to the trial court's conclusions. *People v. Morgan*, 2025 IL 130626, ¶ 22. In addition, we may affirm a grant of summary judgment on any basis appearing in the record, even if the trial court did not rely on that ground. *In re Marriage of Hipes*, 2025 IL App (1st) 240601, ¶ 71.

¶ 41    In the instant case, the trial court granted summary judgment because it found that (1) plaintiff was not an intended and permitted user of the Property and (2) the dangerous condition of the tree stump was open and obvious. We will address each finding in turn and address whether defendant's conduct was willful and wanton and therefore not immune from liability under the Act.

¶ 42                    1. Intended and Permitted Use

¶ 43    Plaintiff argues that the trial court erred in finding that she was neither an intended nor permitted user of the park. The Tort Immunity Act defines the care owed by a local public entity as follows:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity *intended and permitted* to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) 745 ILCS 10/3-102(a) (West 2020).

¶ 44     Our supreme court has held that a plaintiff must be both an intended and permitted user of the property to maintain the litigation against the local public entity. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995). "In truth, an intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 45     Plaintiff bears the burden to show that she was an intended and permitted user of the Property when she played badminton in that portion of Prairie Oaks Park. See *Alave v. City of Chicago*, 2023 IL 128602, ¶ 37 (noting that it is the plaintiff's burden to allege and prove all elements of a negligence claim). The relevant intent is that of the local public entity, not the intent of the individual using the property. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 425 (1992). The intent of a local public entity with regard to the use of its property must be inferred from the circumstances. *Sullivan v. City of Hillsboro*, 303 Ill. App. 3d 650, 653 (1999). The intended use can be determined by looking for "affirmative manifestations" such as signs, ground markings, and other physical manifestations. *Alave*, 2023 IL 128602, ¶ 40. "An important circumstance to

consider is whether the municipality has enacted an ordinance governing the use of the property." *First Midwest Trust Co. v. Britton*, 322 Ill. App. 3d 922, 928 (2001).

¶ 46    Defendant points to several entries in the Gurnee Park District Ordinance Code. While a few of these citations are unpersuasive, two are worth discussing. The first pertinent section relates to the erection of the badminton net:

"Unlawful Construction, Maintenance or Encroachment.

No person shall upon or in connection with any property owned and/or managed by the District:

(a) Erect, construct, install, or place any structure, building, improvement, shed, fence, wall, dog run, dog house, tree house, playhouse, play equipment, TV or radio reception device, machinery, equipment, or apparatus of any type, whether stationary or moveable and whether permanent or temporary in character, or stockpile, store or place any organic or inorganic material used for the construction of such items on, below, over or across a Park, without the written authorization from the District, and then only in accordance with the terms and conditions set forth in a license agreement, easement or other written agreement. Corporations may be prosecuted for a violation of this Section when an agent of the corporation performs the conduct that is prohibited." Gurnee Park District Ordinance Code § 2.14 (approved January 17, 2017).

And second, the trial court specifically referred to ordinance 5.01, which states that "No person shall, without a permit: *** (*l*) [c]onduct any organized sporting event as part of any public assembly, picnic, or other gathering." *Id.* § 5.01. The court further noted a park rule that provided that "Games and Sports are allowed in designated areas only."

¶ 47    The parties disagree as to the intended use of the Property behind Tobias's house. Plaintiff argues that the Property is open to the public and there was no rule, ordinance, or sign that specifically prohibited the playing of badminton in the area. Defendant counters that the first ordinance listed above prohibits erecting temporary play structures and that there are posted park rules stating that "Games and Sports are allowed in designated areas only" and visitors should "stay on the marked trail" to preserve nature.

¶ 48    The parties have provided photographs, video stills, testimony, and an overview of property plats using Illinois geographic information system data. The photos show an area with grass, trees, and no clearly defined trails. The Property lies behind residences and is adjacent to a trail that leads to designated fields that can be reserved for sport and play. All of these connected areas are considered part of Prairie Oaks Park, and all are maintained by defendant. While the Property behind Tobias's house can be used by homeowners to more easily access nearby parks, this property is clearly not a public park for sport. It is a green space. There are no physical markings or indications that this area was intended to be used for sports. General use by the public to access connected recreational areas is not the same as defendant intending that the grassy, wooded area itself be used by the public for games and sports. The trial court did not err in finding that plaintiff was not an intended user of the space for the purpose of playing badminton.

¶ 49    Moreover, plaintiff's argument that badminton was a permitted use of the property is not the "smash" she may have intended. Plaintiff argues that badminton is allowed anywhere on park property because the rules only mention other specific sports being restricted to designated areas. Based on this logic, badminton is allowed anywhere on park property because defendant's rules only restrict the playing of baseball, soccer, lacrosse, and golf in designated areas. As defendant notes, the logical extension of this argument is an exercise in *reductio ad absurdum*: that any sport

not specifically mentioned could be played anywhere, from bowling in flower beds to diving in retention ponds and playing badminton inside any building owned by defendant. The trial court did not err in finding that plaintiff was not a permitted user of the property.

¶ 50                              2. Open and Obvious Doctrine

¶ 51     In the alternative, plaintiff asserts that the trial court erred in finding the stump to be an open and obvious hazard. Plaintiff claims the site included "messy, unkempt grass and overgrown shrubbery" that concealed the "uneven, jagged, and elevated tree stump." Defendant counters that even if plaintiff could not clearly discern the stump from one narrow viewpoint, she was aware of the general condition of the property and failed to exercise ordinary judgment in recognizing the potential risk.

¶ 52     Section 3-102 of the Act provides that a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition. 745 ILCS 10/3-102 (West 2020). The Act did not create this duty; it merely codified the duty that existed at common law. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 15. Therefore, we look to the common law to determine whether defendant's general duty of care set forth in the Act extended to the risk at issue in this case. See *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 414 (1991).

¶ 53     The open-and-obvious doctrine is an exception at common law to the general duty of care owed by a landowner. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 142, 151 (1990); *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 42. In Illinois, this exception is based on section 343A(1) of the Second Restatement of Torts and adopted by our supreme court. See Restatement (Second) of Torts § 343A(1) (1965); *Ward*, 136 Ill. 2d at 151. A dangerous condition "may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the

condition." *Ward*, 136 Ill. 2d at 148; accord *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, ¶ 22. The law assumes that people will recognize danger and take care to avoid risk. *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 15. Where the facts are not in dispute about the physical nature of the condition, the question of whether the condition is open and obvious is a legal one, properly determined by a court. *Olson*, 2012 IL App (2d) 110818, ¶ 42; *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1053 (2010).

¶ 54    As noted above, the record in the immediate matter is replete with evidence relating to the physical nature of the tree stump. It is plain from the photos that there was an area of higher grass clearly visible. Even if plaintiff might not have been able to tell what was near the taller grass from a distance, she surely would have known that this area had not been mowed for a reason. There was *something* in the grass. And views of the stump from almost every direction clearly show that this something was a tree stump cut close to the ground. The stump was not "jagged," and photos reveal the "shrub" was actually low-growing plants, identified by Becker, a certified arborist, as wood violets.

¶ 55    Plaintiff described the area around the stump as being "unkempt" and "overgrown" with "shrubbery." Plaintiff does not claim to be a botanist, horticulturist, or even well acquainted with landscaping and lawncare. But her mischaracterization of the plants does not rise to the level of a dispute over the physical condition of the area. Plaintiff and her brother both testified they saw the area of taller grass and Tobias warned plaintiff to use care near it. There was no genuine issue of material fact that a reasonable person would anticipate the danger of stepping on or near the "shrubbery." For these reasons, the trial court properly held that the open-and-obvious doctrine applied as a matter of law.

¶ 56    We note that plaintiff claims for the first time on appeal that the distraction exception to the open-and-obvious doctrine should apply. The existence of an open and obvious condition is not a *per se* bar to finding a legal duty. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 449 (1996). For instance, the distraction exception applies " 'where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002) (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). Plaintiff attempts to avail herself of this exception with the claim that she was *distracted* by the "unkempt grass and overgrown shrubbery." However, because plaintiff failed to raise this argument in the trial court, we decline to consider it now. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985) ("It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal.").

¶ 57                                  3. Willful and Wanton Conduct

¶ 58    Finally, plaintiff asserts that defendant committed willful and wanton conduct and thus is not protected by the Act. Plaintiff makes this argument in passing and without citation to the Act, in violation of Illinois Supreme Court Rule 341(h)(5) (eff. Oct. 1, 2020). The trial court did not address this issue as it granted summary judgment on other grounds, but we are not restricted from addressing it ourselves because we may affirm on any basis supported by the record under our *de novo* review. *Home Insurance Co.*, 213 Ill. 2d at 315.

¶ 59    The purpose of the Act is to protect local public entities and public employees from liability arising from the operation of government. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). By providing immunity, the legislature sought to prevent public funds from being diverted from their intended purpose to the payment of damages claims. *Village of Bloomingdale v. CDG*

*Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001). The immunities afforded under the Act serve as affirmative defenses, which, if properly raised and proven, bar a plaintiff's right to recovery. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43-44 (1998). If no immunity provision applies, a public entity is as potentially liable in tort as any private party. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 229 (2007). "Since the Tort Immunity Act is in derogation of the common law, it must be construed strictly against the public entity seeking immunity." *Andrews v. Metropolitan Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 23.

¶ 60     As noted above, the Tort Immunity Act states that a local public entity has a duty to "maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2020). The Act specifically addresses public property used for recreation:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." *Id.* § 3-106.

This section was enacted to encourage the development and maintenance of public parks, playgrounds, and other recreational areas. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995). As with other sections of the Act, this provides a public entity with "an affirmative defense, which, if properly raised and proven by the public entity, bars a plaintiff's right to recovery." *Id.*

¶ 61 The exception of "willful and wanton conduct" is defined by the Tort Immunity Act:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2020).

It is clear that willful and wanton conduct requires more than mere "[i]nadvertence, incompetence, or unskillfulness." *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 701 (2005). Rather, a plaintiff must plead facts supporting an inference that the defendant was informed of a dangerous condition on the recreational property, knew that others had been injured as a result of the dangerous condition, or intentionally removed a safety device or feature from the recreational property. *Id.*; *Callaghan v. Village of Clarendon Hills*, 401 Ill. App. 3d 287, 301 (2010).

¶ 62 Section 3-106 does not automatically apply to any public area where recreation might occur. *Bubb*, 167 Ill. 2d at 381. "In determining the nature of public property, courts have therefore considered whether the property has been used for recreation in the past or whether recreation has been encouraged there." *Id.* at 382. Assuming, *arguendo*, that plaintiff could have shown that the property was intended to be used for recreation, plaintiff would still have to show that defendant was guilty of willful and wanton conduct. "Willful and wanton misconduct approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." (Internal quotation marks omitted.) *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 448 (1992). Generally, to be guilty of willful and wanton conduct, a defendant must be conscious, from knowledge of the

surrounding circumstances and conditions, that such conduct will naturally and probably result in injury. *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 11.

¶ 63     Determining whether conduct is "willful and wanton" is generally a question for the jury. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27. However, there are circumstances in which it is necessary for the court to "decide as a matter of law whether the plaintiff's complaint alleges sufficient facts of a defendant's willful and wanton conduct to create a jury question." *Murray*, 224 Ill. 2d at 245. Applying the principles to a review of the summary judgment pleadings in this case establishes that no triable issue of material fact exists on whether defendant's conduct was willful and wanton.

¶ 64     The evidence demonstrates that defendant had not received any prior complaints about its maintenance of this grassy, wooded Property. There were no previous accidents reported on the Property. Despite staffing challenges brought on by the pandemic, defendant's employees took significant steps to maintain all park properties for the enjoyment of residents. The Property had been mowed the day before plaintiff fell. The stump had not been removed when the tree fell in 2018, but the Property was a grassy, lightly wooded area that saw only limited public use compared to the nearby trail and designated clearings for sports and recreation. Plaintiff failed to allege facts that, taken as true, would permit an inference that defendant was on notice of a high risk of injury posed by the stump. Even if we were to determine that defendant was negligent for not immediately grinding the stump in 2018, which we have not, we would not find that defendant's conduct was "willful and wanton" as required by the Act.

¶ 65                          III. CONCLUSION

¶ 66     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 67     Affirmed.

*Wright v. Gurnee Park District*, 2025 IL App (2d) 240687

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 21-L-372; the Hon. Joseph V. Salvi, Judge, presiding. |
| **Attorneys for Appellant:** | Alexis C. Karkula, of Sherwood Law Group, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Dustin S. Fisher, of Park District Risk Management Agency, of Lisle, and Michael R. Hartigan, of Hartigan & O'Connor, P.C., of Chicago, for appellee. |